So ordered. All concur.

---

(58 App. Div. 439.)

THOMPSON v. THOMPSON et al.

(Supreme Court, Appellate Division, First Department. March 15, 1901.)

1. WILLS—TRUSTS—CONSTRUCTION.
    A will left the estate to executors in trust, to divide and allot one share to each of testator's five children, and to continue seised of each such share during the life of the child to whom the share was allotted, paying the net income to such child, and on the death of each child to convey, pay over, and distribute the share allotted to such child to the lawful issue of such child so dying, if any, and, if none, then to the issue of any surviving brother or sister in equal portion, per capita, and not per stirpes. *Held* that, on the death of one of the children without issue, the grandchildren of the testator were vested with an estate in fee as tenants in common of the interest of the deceased child in the land of the testator, since the estate of the executors as trustees terminated as to the share allotted to each child on his death.

2. SAME—EQUITABLE CONVERSION—REAL ESTATE—PERSONAL PROPERTY.
    A will left the estate to the executors in trust, to divide and allot one share to each of testator's five children, and to continue seised of each such share during the life of the child to whom the share was allotted, paying the net income to such child. The executors were authorized to sell and convey, and purchase, any real estate. On the death of any child the trust as to the share allotted to him was to terminate, and the executors convey, pay over, and distribute the capital and accumulation of such share to the issue of such child, if any, and, if none, to the grandchildren of testator then living in equal shares. *Held*, that there was no equitable conversion of the real estate into personalty by the terms of the will, and the grandchildren of the testator, on the death of a child without issue, were vested in fee in the share of such child in specie.

3. PARTITION—TENANTS IN COMMON—INFANTS—SURROGATE.
    Under Code Civ. Proc. § 1532, providing that, where two or more persons hold real property as tenants in common, any one or more of them may maintain an action for the partition of the property, any one of the grandchildren of a testator, in whom the share of a deceased child in his estate is vested on the death of such child, may maintain an action for partition of the real estate so vested in them as tenants in common, subject only to the condition of section 1534 that, if an infant, he can bring the action only on written authority of the surrogate.

4. SAME—COURTS—APPEAL AND ERROR.
    Where, in partition, the trial court denied partition on the erroneous conclusion that the infant plaintiff had no such interest in the land as enti-

tled him to maintain the action, the judgment should be reversed, though partition might be denied on the ground that it would not be for the best interests of the infant; since he has the right to have that question considered by the court.

**5. SAME—PERSONS ENTITLED TO SUE—COSTS.**

Where, by the terms of a will, the estate was left to the executors in trust, to hold during the life of the testator's children, and on the death of any child to convey and distribute the share allotted to such child to testator's grandchildren, and on the death of a child they fail to make such conveyance and distribution, costs in a partition suit by one of the grandchildren to recover his share should not be imposed on him, but should be paid out of the estate.

Appeal from special term, New York county.

Action by Jonathan Thompson, an infant, by his guardian ad litem, against Jane Remsen Thompson and others. From a judgment dismissing the complaint (67 N. Y. Supp. 307), plaintiff and certain defendants appeal. Reversed.

The action was brought for the partition of three tracts of land, with adjacent water front, situated within the blocks bounded by Fourth avenue, 129th street, 131st street, and the Harlem river. Before the death of William Remsen this property belongèd, one-third to him and two-thirds to the defendant Henry Hart. William Remsen died in 1895, leaving a last will and testament which was duly proved and admitted to probate, the important parts of which are as follows:

After making certain specific bequests, the testament provides: "Third. All the rest, residue. and remainder of my estate, both real and personal, of whatsoever kind or nature and wheresoever situate, of which I may die seised or possessed, or be in any way entitled to, and whether held by me solely or in common with others, I give, devise, and bequeath unto my executors, hereinafter named, and the survivors and survivor of them, upon the trusts and for the uses and purposes following; that is to say:   (1) In trust to divide the same into five equal parts or shares, and to allot to my children, Robert George Remsen, Charles Remsen, Jane, wife of Joseph T. Thompson, Elizabeth Remsen, and Sarah, wife of William Manice, each, one of said five parts or shares. (2) And as to each of said parts or shares to continue seised of the same for and during the life of the child to whom such part or share is allotted, upon the trust to collect and receive the rents, issues, profits. dividends, interest moneys, and income arising therefrom, and, after paying all the taxes, assessments, repairs, charges, costs, and expenses thereof, to apply in the case of my son Robert George Remsen the net annual income arising from the part or share allotted to my said son Robert George Remsen to his use, maintenance, and support, for and during his life, and in the case of my other son, Charles, and of my daughters, to pay over to them, respectively, the net annual income of the share or part allotted to them, and on the death of each of my children mentioned in this third clause of my will to convey, pay over, and distribute the whole capital of the part or share allotted to the child so dying, with all accumulations thereof, to and among the lawful issue, if any, of such deceased child, and, if such child leave no lawful issue then surviving, then to divide, distribute, and pay over the said capital and accumulations in equal portions to and among the children then living of any surviving brothers and sisters, including the children then living of any deceased brother or sister mentioned in this third clause of my will, per capita, and not per stirpes." By the fourth clause of the will the trustees of the several shares are given power to "put, place, invest, and keep the principal of each share," and to "improve, alter, repair, and rebuild any of the real estate held by them under the provisions of the will," to lease any of the real estate for terms not exceeding 21 years, and at any time during the continuance of the trusts "to sell and convey any real estate held by them under the provisions of this will, or purchased by them, on such terms and conditions, and either wholly for cash, or partly for cash and partly on credit, and to give good and sufficient deeds of conveyance

therefor." By the fifth clause of the will each of the children to whom a part or share was given was authorized to dispose of the same by will to and among his or her lawful issue, if any, and, in default of such issue, then to and among his or her surviving sisters and brothers and the lawful issue of any deceased brother or sister mentioned in the third clause. By the sixth clause it is provided that, in case of the death of either or any of the sons or daughters mentioned in the third clause before the death of the testator, the part or share of the child so dying to be conveyed, paid over, and distributed to the lawful issue of such child, and, failing such issue, then to the surviving brothers and sisters of the child so dying, including the children then living of any deceased brother or sister mentioned in the third clause, per capita, and not per stirpes. The seventh clause is as follows: "Seventh. For the more convenient discharge of the duties herein imposed upon my executors, I authorize and empower them, or such of them as shall act, and the survivors and survivor of them, to compromise, compound, settle, and adjust, by arbitration, purchase, or otherwise, according to their discretion, all accounts, contracts, agreements, claims. demands, suits at law or in equity, and controversies in favor of or against or belonging or relating to me or to my estate; to make all payments necessary therefor out of any funds in their hands; to partition any lands or real estate which I may hold solely or in common with others, either by voluntary deeds or by means of actions or other proceedings instituted for that purpose; to exchange lands and to purchase any outstanding leases; to lease or demise all or any part of the real estate which I shall own at my decease, or which they may acquire under the provisions of this my will, on such terms and for such rents as they shall deem most advantageous, and to renew all or any leases thereof; to sell all or any part of the estate, real and personal. which I shall own at my decease, or which my said executors may acquire under the provisions of this my will, at such times and on such terms and in such manner as in their discretion shall seem best, and either for cash or partly for cash and partly for credit, to be secured by bond and mortgage thereon; and to give good and sufficient deeds or conveyance therefor." He then nominated and appointed his son Charles and his sons-in-law, William Manice and Joseph T. Thompson, to be the executors and trustees under the will.

Besides the undivided interest in the land sought to be partitioned in this action, which is substantially unimproved and unproductive, the testator left a personal estate valued at more than $3,300,000, 28 separate pieces of improved and unincumbered real estate in Manhattan, and an undivided two-thirds interest in 14 other parcels of improved real estate in that borough. At the time of his death the testator was a widower, and his sons, Robert George Remsen and Charles Remsen, and the three daughters, Jane R. Thompson. Elizabeth Remsen, and Sarah Manice, survived him. Robert G. Remsen, the son mentioned in the third clause of the will, died in January, 1898, intestate, without issue, and unmarried. Charles Remsen and William Manice qualified as executors, and assumed the execution of the trusts created for the testator's children, Robert, Charles, Elizabeth, and Sarah, but resigned the trust for Mrs. Thompson. Joseph T. Thompson renounced his executorship, and the United States Trust Company of New York was appointed co-trustee with him of Mrs. Thompson's part or share of the trust estate. The plaintiff, a son of Jane R. Thompson, one of the cestuis que trustent under the will in question, brings this action for partition, claiming that upon the death of Robert G. Remsen an undivided one-fifteenth share or interest in the premises in question thereupon passed to the children of his brothers and sisters then living, by virtue of the second paragraph of the third clause of the will. At the time of Robert's death there were eight of the grandchildren of testator living, one of whom, Elizabeth Remsen the younger, was born after the death of the testator. The trial court held and decided that the plaintiff had no such interest in the property described in the complaint as entitled him to maintain an action for partition, and therefore dismissed the complaint. Judgment was entered accordingly, and from such judgment appeals were taken by the plaintiff and by the defendants Jane Remsen Thompson the younger and Elizabeth Remsen Thompson.

69 N.Y.S.—15

Argued before VAN BRUNT, P. J., and HATCH, RUMSEY, Mc-LAUGHLIN, and O'BRIEN, JJ.

Edward W. Sheldon, for plaintiff.

Samuel Philips Savage, for defendants Jane Remsen Thompson and Elizabeth Remsen Thompson.

John M. Perry, for executors.

David B. Ogden, for infant defendants.

Everett V. Abbott, for defendants Charles Remsen and others.

Thomas D. Rambaut, for defendant Elizabeth Remsen.

Gratz Nathan, for defendant Henry Hart.

HATCH, J. In arriving at a proper construction of this will I purpose first to examine the same and ascertain the rights of the parties thereunder, upon the assumption that the real property devised passed thereby as such, and that its character was not changed by the terms of the will. This necessarily involves a construction of the power and estates in trust created by the will. By the third clause of the will, after devising and bequeathing the residuary estate to his executors in trust, the testator provided as follows:

"(1) In trust to divide and allot to my children, * * * each, one of said five parts or shares."

This provision, standing alone, creates a power in trust, to be exercised in connection with the estate in trust created by the preceding paragraph. By the succeeding paragraph a limitation is placed upon the duration of the trust estates as follows:

"(2) And as to each of such parts or shares to continue seised of the same for and during the life of the child to whom such part or share is allotted, upon the trust to collect and receive the rents, issues, profits, dividends, interest moneys, and income arising therefrom, and, after paying all the taxes, assessments, repairs, charges, costs, and expenses thereon, to apply in the case of my son Robert George Remsen the net annual income arising from the part or share allotted to my said son Robert George Remsen to his use, maintenance, and support, for and during his life, and in the case of my other son, Charles, and of my daughters, to pay over to them, respectively, the net annual income of the share or part allotted to them."

This provision clearly cannot be construed as devising to the children mentioned any estate or interest in the real property. A valid express trust is created for their benefit, and the whole legal estate is vested in the trustees, subject to the execution of the trust, performance of which might be enforced by them. Real Prop. Law, §§ 76, 80. The trust estates were limited, however, to the period of the life of each child to whom a share or part was to be allotted. Therefore, upon the death of Robert George Remsen, the trust estate created for the period of his life would terminate; and the provision of the will is:

"On the death of each of the children mentioned in this third clause of my will to convey, pay over, and distribute the whole capital of the part or share allotted to the child so dying, with all accumulations thereof, to and among the lawful issue, if any, of such deceased child, and, if such child leave no lawful issue then surviving, then to divide, distribute, and pay over the said capital and accumulations in equal portions to and among the children then living of

any surviving brothers and sisters, including the children then living of any deceased brother or sister mentioned in this third clause of my will, per capita, and not per stirpes."

Treating this as a devise of remainders over to grandchildren, as we think it must be treated, the trust estate for the life of Robert having terminated with his death intestate and without issue, the grandchildren became seised in fee of undivided interests in Robert's share in fee. This gave them an estate in fee as tenants in common of Robert's undivided interest in the land, and by virtue of the express provisions of Code Civ. Proc. § 1532, they had the legal right to maintain an action of partition, subject only to the qualification contained in section 1534 of the Code, where the right to partition in the case of infants is made to depend upon the consent of the surrogate, and the court must be satisfied that the interests of the infant will be promoted by a judgment awarding partition.

This view is supported by authority. Campbell v. Stokes, 142 N. Y. 23, 36 N. E. 811. The terms of the will in that case did not vest the legal title to the estate in the trustees. The power to be exercised by them was to divide and allot, and to convey, pay over, and deliver, upon the death of the child. In the present case, the devise of the estate is to the trustees, and not at all to the children; but by the second paragraph of the third clause a limitation is placed upon the estate, terminating the same on the death of the child, and by virtue of this provision of the will the estate vested as to such share immediately upon the death of the child, when the estate of the trustees terminated. This condition makes the two cases exactly parallel, so far as the legal rights are concerned. As it was held that the grandchildren in the Campbell Case were necessary parties to an action in partition, because the estate had vested in them, so here it must be held that the plaintiff, with the sanction of the court, is entitled to maintain an action of partition for the same reasons. This case, therefore, is a direct and decisive authority upon the question. Nothing which appears in Henderson v. Henderson, 113 N. Y. 1, 20 N. E. 814, is contrary to this rule. That was an action for the construction of a will. In that case, as here, there was an outstanding power of sale which had never been executed. The estate in the children at the time the action was brought was an estate in remainder only, and the court properly held that, such being the nature of the estate, compulsory partition could not be had, as there was still an outstanding power of sale in the executor, and by the terms of the will it was the intent of the testator that his estate should be partitioned by the trustee, and that, as the estate was simply one in remainder, compulsory partition and sale of the land could not be had. This case was correctly decided on principle, as such estates may be entirely unequal, and partition, if ordered, might be to the advantage of one and the disadvantage of another. Besides, as between the owners of such estates, power to direct a sale of the premises is withheld, unless upon the consent of the holder of the particular estate, evidenced in writing. Code Civ. Proc. § 1533; Levy v. Levy, 79 Hun, 290, 29 N. Y. Supp. 384; Scheu v. Lehning, 31 Hun, 183.

While it may be true that the remainder-men may under certain

circumstances maintain partition, where actual partition may be had without prejudice to the holder of the particular estate or of any of the remainder-men, yet it is evident that it is subject to quite different rules from those which obtain as to estates in fee in possession. In the present case, the action is brought by the plaintiff as owner in fee of an undivided interest in common with other like owners; and as to such cases, except as qualified by the power of the court to withhold actual partition or sale in case of infants, the right of partition is absolute. The Henderson Case, therefore, cannot be regarded as an authority defeating the right to maintain this action. It is quite possible that, although an estate in fee is vested in the plaintiff, it is still subject to the outstanding power of sale in the executors; but such fact cannot be held to defeat the right of the plaintiff to maintain partition in a proper case, for by the provisions of the Code he is vested with such an estate as gives him the absolute right to maintain the action. Undoubtedly the power exists in the plaintiff to compel the execution by the executors of the outstanding power of sale, and an action could be maintained for that purpose (Dana v. Murray, 122 N. Y. 604, 26 N. E. 21); but such right is evidently not exclusive. It is a fact, however, which the court may consider, bearing upon the question as to whether or not partition ought to be awarded. We have no doubt but that the court may consider the existence of the outstanding power of sale, and that the parties have never requested the trustees to exercise the power before resorting to the action of partition. While a person entitled to partition may maintain the action, yet the court, in determining whether partition will be awarded, may take all these facts into consideration, and conclude therefrom that the demand ought to be made upon the trustees in the first instance, and they be given an opportunity to comply therewith before compulsory partition will be awarded. In the present case, the court has denied partition for the reason that the plaintiff, under the provisions of the will, had no such title as authorized him to maintain such action. Its conclusion in this respect cannot be sustained. The court did not assume to pass upon or determine whether it was for the best interests of the infant that a partition or sale of the premises should be had, or whether demand for division and allotment should have been made of the executors before resorting to an action. The plaintiff was entitled to the judgment of the court upon those questions; and, if the plaintiff took the real property as such, the judgment must be reversed, and the case remitted to the trial court for disposition of such questions.

It is claimed, however, that under the will in question an equitable conversion of the real property into personalty has been worked by the terms of the will, and that such was the intent of the testator. It is quite easy to construct an argument in support of this view, and the terms of the will in many respects lend much color to the claim; but a consideration of the whole scope of the will and the language which has been used leads us to the conclusion that it was not the intent of the testator to work a conversion of his real property. There is no mandatory direction in the will to sell the real property; and while, undoubtedly, it is not necessary, in order to work an equi-

table conversion, that there should be an imperative direction to sell, yet it must appear that a conversion of the real property is necessary to accomplish the purpose intended by the general scheme of the will before the permissive authority to sell will be construed as a mandatory direction. Lent v. Howard, 89 N. Y. 159; Salisbury v. Slade, 160 N. Y. 278, 54 N. E. 741. We do not think that the terms of this will or the character of the property disposed of makes it necessary to convert the real estate into personalty in order to carry out the intent of the testator. While it is true that there are a large number of separate pieces of real property, some of which were owned solely by the testator in fee, and in others he owned an undivided interest with other persons, yet it also appears that the personal estate amounted to $3,000,000 and upwards, and it is quite probable that the executors and trustees could make the allotment provided for in the will in both real and personal property, without the necessity of converting the whole of the real estate into money; and certainly, when taken in connection with the ample powers which are given to sell the real estate, it is far from being impossible to conclude that the allotment of the entire property could be made in specie and fulfill to the letter the terms of the will. Under such circumstances, it is readily seen that there is no such blending of the entire estate as to create a common fund. On the contrary, the character of the property can be kept entirely separate, and the allotment made as the will provides. In addition to this, by the express provisions of the will, the executors and trustees are authorized to invest the whole or any part of the estate in real property, as well as in personal securities. If the executors and trustees, in the discharge of their duties, invested the whole of the estate in real property, they would comply with the provisions of the will, and evidently fulfill the intent of the testator. If the directions in this respect were followed by the executors and trustees, and the whole of the estate invested in real property, the allotment could still be made, and the scheme of the will be fulfilled. Under such circumstances, it cannot be doubted but that the persons entitled would take the estate as real property, and no one could question but that the terms of the will would be complied with. In this connection the language of the will, when the time of distribution arrives, is, "to convey, pay over, and distribute." Manifestly, the word "convey" is appropriate to the transfer of real property, and entirely inappropriate to the transfer of personal estate; and while the thing to be conveyed is capital and accumulations, yet, inasmuch as the shares to be distributed under the allotment may consist of real or personal property, or both, the share is not inaptly designated as capital and accumulations. It is evident that the word "capital" is here used to designate the shares, and not to characterize the estate directed to be conveyed. The word "accumulations" is quite appro priate, as it is apt to describe the rents, issues, and profits which may arise from the whole estate in the course of the administration of the trust. This language, in connection with the thing to be paid over, it may be conceded, does not accurately and technically describe real property; but, when the words are considered with the language directing distribution and the whole scheme of the will, it is readily ap-

parent that no violence is done in holding that the words themselves embrace either real or personal property or both.

We have examined with some care all of the authorities which have been cited by the respective counsel in support of the contention that the will worked an equitable conversion of the real estate into personalty. It is not necessary that we discuss each one in detail. Probably the strongest case in support of the claim is that of Delafield v. Barlow, 107 N. Y. 535, 14 N. E. 498. This was a border case, and while the court held that an equitable conversion was worked by the terms of the will then under consideration, yet they arrived at such conclusion with doubt and hesitation. In that case, as here, there was the devise of both real and personal property, with a direction to allot into shares. The power of sale was not mandatory, but permissive, and in these respects the cases are quite parallel. In other respects there is a radical difference. In the Delafield Case, the language of gift is, "I give and bequeath," and the court held that this language was strictly applicable to a bequest of personal property. In the present case, the language of the will is, "I give, devise, and bequeath,"—language which excludes the idea that personal property only was to pass, and which is peculiarly appropriate to the character of the property which in fact passed to the trustees. In the Delafield Case, the language of distribution was, "pay over, transfer, and deliver,"—language which finds proper application only when a bequest of personal estate is made. In the present will the language of distribution is, "convey, pay over, and distribute." Such language is apt and appropriate to transfer both real and personal property. Aside from this difference in language, however, there is contained in the present will a direction to the executors and trustees to invest the whole or any part of the estate in real property; and, as we have before pointed out, if such direction be followed, the whole of the estate might be conveyed as real property to those entitled to take, and the will in its entirety be fulfilled. It seems clear, therefore, that the Delafield Case, instead of being an authority in favor of the contention that an equitable conversion is worked, when analyzed, becomes a distinct authority opposed thereto. It cannot be doubted that, had the words of gift and the direction to distribute in the Delafield Case been "devise" and "convey," the decision would have gone the other way, while further force is added in the present case by the direction to invest in real property. No case, we think, can be found in this jurisdiction which adds any strength to the doctrine laid down in the Delafield Case. It is, therefore, not necessary to refer to the numerous discussions which have been had in other cases. Isolated portions of this will may be laid hold of, and color be lent to the claim that an equitable conversion was intended and worked thereby; but, when the whole scheme of the will is examined, it seems clear that an equitable conversion was neither worked nor intended. These views lead us to the conclusion that there was no conversion of this estate into personalty.

So far as the costs and allowances are concerned which have been awarded against the plaintiff, we think that they ought not to be permitted to stand. The executors and trustees have failed to execute

this will in accordance with its terms, and the plaintiff was clearly justified in making the attempt in this action to assert his rights.

It follows that the judgment should be reversed, and a new trial granted, with costs to all parties payable out of the estate. All concur.