---

(85 App. Div. 295.)

## In re LEE'S WILL.

## In re COOLIDGE et al.

(Supreme Court, Appellate Division, Third Department. June 30, 1903.)

1. WILL—CONSTRUCTION—EQUITABLE CONVERSION.
　　Testator made several small bequests, and then bequeathed and "devised" the residue of his estate to his executors in trust for his brother, sisters, and son, providing that the funds for his brother and sisters should be of a sufficient amount to yield a specified sum annually, and that the balance should be for the fund for his son, and giving the executors discretionary authority to sell the real property. He directed that the words "trust funds" should be construed to include real as well as personal property, and authorized the executors to retain as part of the trust funds any stocks, bonds, or other "investments whatever" which he had. On the death of the son the principal of his trust fund was to be "transferred" and paid by the executors to testator's next of kin, to whom he gave, "devised," and bequeathed the fund accordingly. The executors were further authorized in their discretion to "transfer" and pay over to the son any portion of his trust fund, in which case the testator gave, "devised," and bequeathed this to the son. Testator left sufficient personal property to pay all debts and bequests, and to create all the trust funds, ·except that of the son. Held, that the will did not operate as an equitable conversion of testator's real estate into personal property.

2. SAME—DISTRIBUTION—VESTING OF BEQUESTS.
　　Testator made several small bequests, and created certain small trust funds, and then created a trust fund for the benefit of his son out of the residue of the estate, directing that on the death of the son the principal of his fund should be transferred and paid over by the trustees to testator's next of kin, to be divided among them according to the statute of distribution, and providing that the phrase "next of kin" should include only such persons as should answer the description at the time of distribution. The son died within a year after testator's death. Held,

that the vesting of the estate in the next of kin occurred at the death
of the son, and was not delayed until actual distribution could be made.

Appeal from Surrogate's Court, Warren County.

Proceedings for the settlement of the accounts of Jonathan M..
Coolidge and Louis M. Brown, executors of the last will and testament
of George W. Lee, deceased. From a part of the decree construing
the will, Sarah J. Snyder and others appeal, and from other parts there-
of Henry A. Howard, administrator of Nancy Holland, deceased, ap-
peals. Affirmed. .

The questions presented upon this appeal involve for their determination
the construction of the will of George W. Lee, who died May 7, 1901, being
at the time a resident of Warren county. The will was admitted to probate
by the surrogate of that county May 27, 1901, and letters testamentary
thereon were by him on that day issued to Jonathan M. Coolidge and Louis
M. Brown, the executors named in the will. The testator left an estate of
over $300,000 in value. He had some real estate, but much the greater portion·
of his estate was personal property. In his will, after making various specific
bequests of comparatively small amounts, and after devising in the second
paragraph thereof to his sister Nancy Holland, during her life, the use of
the house where she resided, the testator created several trust funds, and
the questions to be determined here relate to the disposition of these trust
funds upon the death of the beneficiaries thereof. These trusts were created
in the sixth paragraph of the will in the following language:

"All the rest and residue of my estate whatever, both real and personal,
and wherever situated, I give, devise and bequeath to the executors hereof,
in trust, however, to use and dispose of the same as follows, viz.: The said.
executors (as trustees) shall at once divide said 'rest and residue' into four
separate trust funds, and they shall thereupon designate one of such funds
for my brother, James Lee, another for my sister Sarah Snyder, another for
my said sister, Nancy Holland, and the other for my said son, Forest T. Lee.
Each of the trust funds designated for my brother and sisters shall be of
such an amount as shall be deemed by the said trustees amply sufficient to
produce a net income of three hundred dollars ($300.00) per year. The trust
fund designated for my said son shall include all of such 'rest and residue'
which shall remain after taking therefrom the amounts necessary to provide
the three funds for my brother and sisters."

The seventh and eighth paragraphs of the will describe the specific manner·
in which the trustees should manage such trust funds as follows:

"Seventh. The said trustees shall use and dispose of each of the trust
funds which shall be designated for my brother or one of my sisters, as
hereinbefore provided, and the income therefrom, as follows: They shall
invest said trust fund, and from time to time re-invest the same, so as to
keep it invested during the life of the beneficiary for whom it has been
designated; and during that time they shall receive and collect the income
therefrom, and out of the net income arising therefrom they shall pay to the·
beneficiary (my brother or sister) the sum of three hundred dollars ($300.00)
per year, which payments shall be made quarterly, and shall be computed
from the time of my death. Any surplus net income arising from such trust
fund during the life of the beneficiary (my brother or sister) over and above
said sum of three hundred dollars ($300.00) annually, shall, when ascertained,
be added to the income of the trust fund to be designated for my said son,
and shall be disposed of in the same manner as is hereinafter provided for·
the disposition of the income from said trust fund to be designated for my
son. Upon the death of the beneficiary (my brother or sister) for whom the
trust fund shall have been designated, the principal of said trust fund shall
be added to the principal of the trust fund to be designated for my said son,
and thereafter shall be held, used and disposed of by the said trustees in the·
manner hereinafter provided for the disposition of the principal of the said
trust fund to be designated for my son.

"Eighth. Subject to the provisions contained in the following (ninth) para-

.graph hereof, the said trustees shall use and dispose of the trust fund which shall be designated for my said son, Forest T. Lee (in case my said son shall survive me), and the income therefrom, as follows: They shall invest said trust fund, and from time to time reinvest the same, so as to keep it invested during the life of my said son, and during that time they shall receive and collect the income therefrom, and out of the net income arising therefrom, they shall apply to the use of my said son, Forest T. Lee, the sum of six hundred dollars ($600.00) per year, computing from the time of my death. And in case the said trustees shall deem it advisable and for the best interests of my said son, I authorize them to apply to his use, from said net income such additional sum as they may deem advisable, not exceeding in any one year the sum of nine hundred dollars ($900.00) in addition to the sum of six hundred dollars ($600.00) hereinbefore mentioned. Any surplus net income arising during the life of my said son, from the trust fund designated for him, over and above what may be paid to my son, or applied to his use, as provided in this and the next succeeding paragraph, shall be paid over by the said trustees (at least annually, and oftener, if they deem it advisable) to my next of kin, exclusive of said Forest T. Lee, to whom in such case I .give and bequeath the same, to be divided between them (if more than one) .in shares between themselves according to the statute of distribution. The words 'net income' as used in this paragraph, shall be construed to include .such surplus income arising from the other trust funds hereinbefore men-_ tioned as shall be added to the income of the trust fund to be designated for my said son, pursuant to the provisions of the preceding (seventh) para- graph hereof."

The ninth paragraph of the will contains the following:

·"Ninth. In addition to the foregoing provisions in favor of my said son, I hereby authorize the said trustees (in case they shall deem it advisable and for the best interests of my said son) to allow him to occupy, for his resi- -dence, free of rent, the house and lot where I now reside, at the corner of Warren and Church streets, in said village of Glens Falls, and to use the furniture and other chattel property (including horses, carriages, &c.,) belong- ing on said lot; the said trustees paying from the net income mentioned in .the last preceding paragraph the taxes, insurance and repairs on said house and lot, in addition to applying one thousand five hundred dollars ($1,500.00) of such net income to the use of my said son, as therein provided. I further authorize and empower the said trustees (in case they shall at any time deem It advisable and for the best interests of my said son to do so) to transfer or pay over to him, at any time, or from time to time, the whole or any portion of the principal of the said trust fund so designated for him; and in such case I give, devise and bequeath to my said son, absolutely, so much of said trust fund as shall be so transferred or paid over to him by said trustees. Upon the death of my said son, the principal of said trust fund so designated for him (or so much thereof as shall not have been transferred to him) together with all income therefrom then in the hands of the said trustees or uncollected, shall be transferred and paid over by the said trustees to my next of kin, to be divided between them (if more than one) in shares between themselves according to the statute of distribution; and I give, ·devise and bequeath the same to such next of kin accordingly. The provi- sions in this paragraph contained providing for the final disposition of the ·principal of the trust fund to be designated for my son, shall be construed to apply to and regulate the disposition of the principal of the trust funds *o be designated for my brother and sisters, as such last mentioned trust funds may from time to time be added to the trust fund designated for my son."

In the tenth paragraph the testator, in the event that his son Forest T. Lee did not survive him, gave, devised, and bequeathed to his next of kin, to be divided between them in shares according to the statute of distribution, the portion of his estate which if his son had survived him would have consti- tuted the trust fund provided for him.

The eleventh and twelfth paragraphs are as follows:

"Eleventh. I direct that the words 'trust fund' or 'trust funds,' as used in this instrument, shall be construed to include real estate as well as personal

property, and that the words 'next of kin,' wherever used in this instrument, shall be construed to mean my lawful descendants or descendant, if any there shall be, to the exclusion of all my collateral relatives. I further direct that no person who shall at the time of my death answer the description of my 'next of kin' or my 'next of kin exclusive of my son,' shall be deemed, by reason of that fact, to have acquired any vested right to share in the distribution of any portion of my estate; but the phrases above quoted shall be construed in each case as including only such persons as shall answer the description at the time of making the payment or distribution.

"Twelfth. I hereby expressly authorize and empower said executors and trustees to sell and convey and convert into money any and all real estate of which I may die seized or the owner, and to execute and deliver conveyances thereof; subject, however, to the life estate devised by the second paragraph hereof."

The testator left no widow, and left as his only heir at law and next of kin his son, Forest T. Lee. The son died intestate February 16, 1902, leaving no descendant and no widow. If Forest T. Lee had predeceased his father, the testator, the next of kin of the father at the time of his death would have been his brother, James Lee, two sisters, Sarah J. Snyder and Nancy Holland, the three persons named in the will, other than the son, for whom trust funds were created, and the children of three deceased sisters. Nancy Holland died intestate March 25, 1902, leaving a husband her surviving, and leaving no descendants. At the time of her death her only heirs at law and next of kin were the persons above specified (except herself) as the persons who were the heirs at law and next of kin of said George W. Lee, if his son Forest T. Lee were dead.

Letters of administration upon the estate of Nancy Holland were issued to Henry A. Howard by the surrogate of Warren county, June 11, 1902. During the pendency of this proceeding for an accounting, and on October 13, 1902, the testator's brother, James Lee, the beneficiary of one of the trust funds, died, leaving a will, and his executors and next of kin have been brought in as parties to this proceeding.

The administrator of Nancy Holland contends that he is entitled as such administrator to one-sixth of the entire residuary estate left by George W. Lee, on the theory that the will operated to effect an equitable conversion of the real estate of testator into personalty, and that Nancy Holland acquired a vested interest in said residuary estate on the death of the testator's son, Forest. The next of kin who are appellants contend that the administrator of Nancy Holland is entitled to no share whatever in the estate on the grounds, first, that the will did not effect an equitable conversion of the real estate, so that the administrator was not entitled to any share in the realty; and, second, that as the son Forest T. Lee and the sister Nancy Holland both died within one year after the death of the testator, and before any distribution of the estate had been made or could be made under the law, said administrator was entitled to no share in the personalty because of the provision of the eleventh paragraph of the will, providing that only those should be entitled to share in the testator's estate who answered the description of the next of kin at the time of the payment or distribution. None of the real estate of the testator was sold by his executors prior to the death of Nancy Holland, but some of it has been sold by them since.

The surrogate decided: (1) That upon the death of Forest T. Lee the persons then living who then answered the description of next of kin of George W. Lee acquired vested rights to share in the division of the personal estate in the hands of the executors of the will of said George W. Lee, forming a part of the trust fund directed in the will to be designated for said Forest T. Lee, and also in the real property which was devised by said will, in shares between themselves according to the statute of distribution. (2) That said Henry A. Howard, as administrator, etc., of Nancy Holland, deceased, is entitled to receive, upon the distribution of the estate, the same share of the proceeds of the personal estate which would have been distributable to said Nancy Holland if she had survived until the distribution was actually made. (3) That the will did not work an equitable conversion of real property into personal property; and upon the death of Nancy Holland intestate her interest in the real estate descended to her heirs at law (subject to the power

of sale given to the executors of the will of George W. Lee), and upon the death of James Lee his interest in such real estate passed to the devisees under his will, subject to such power of sale; also that the administrator of the estate of Nancy Holland was entitled to one-sixth of the principal of the trust fund set aside for said Nancy Holland, and also one-sixth of the principal of the trust fund set aside for James Lee. The decree entered is based upon such decision.

The administrator of Nancy Holland has appealed from those portions of the surrogate's decision and decree that find that the will did not work an equitable conversion of the real estate into personal property, and Sarah J. Snyder and the other next of kin have appealed from those portions of the decision and decree which find that the administrator of Nancy Holland is entitled to a share in the trust funds created for Forest T. Lee, for Nancy Holland, and for James Lee.

Argued before PARKER, P. J., and SMITH, CHASE, CHESTER, and HOUGHTON, JJ.

King & Angell, for Sarah J. Snyder and the other surviving next of kin of said deceased.

C. H. Sturges, for Henry A. Howard, as administrator, etc.

CHESTER, J. Two questions only need to be discussed in determining this appeal: First, whether or not the will operated as an equitable conversion of the testator's real estate into personalty; second, whether or not upon the death of the testator's son, Forest T. Lee, Nancy Holland and the other persons then living who answered the description of next of kin of the testator acquired vested rights to share in the distribution of his estate.

1. There is no dispute here as to the law relating to equitable conversion, but the trouble arises in applying the law to the facts in this case. The law has been settled by a long line of authorities that where, as here, the power of sale given to the executors is discretionary, and not mandatory, conversion will not be decreed unless there is an absolute necessity to sell in order to carry out the scheme of the will, or unless the intention that there should be a sale is to be found in the whole scope and tenor of the will. It was said in the Matter of Tatum, 169 N. Y. 518, 62 N. E. 580, which was a case where the power given to sell the real estate was discretionary only, that "unless the purpose of the testator will fail without a conversion equity will not presume it. There should be an implication of a direction to convert so unequivocal and so strong as to leave no substantial doubt in the mind. * * * Indeed, conversion, to be decreed, must be so necessary as that without it the provisions of the will would be rendered unreasonable and incapable of a just and an effective operation."

In the case at bar the testator owned at the time of his death his residence property in the village of Glens Falls, which by the ninth paragraph of his will he authorized his trustees to allow his son to occupy for his residence free of rent. He also owned another house and lot near such village, the use of which he devised to his sister Nancy Holland during her life by the second paragraph of his will, and he also owned some half dozen other pieces of real estate, part of which were vacant. All of this real estate went into the trust created by the sixth paragraph of the will, and only one piece has been sold by the trustees. By the eleventh paragraph the testator directs that

the words "trust fund" or "trust funds," as used, "shall be construed
to include real estate as well as personal property." And by the
thirteenth paragraph he expressly authorizes his trustees to "retain
and hold as a part of said trust funds any stocks, bonds, or other
securities or investments whatever," which he may have at the time of
his death. This language is broad enough to cover his investments
in real estate. The testator left upwards of $250,000 of personal prop-
erty. This was ample to pay all debts and expenses of administration,
as well as all the specific legacies, and also to provide capital for all
the trusts created in the will, outside of the trust created for the bene-
fit of the son, and to leave for the capital of the trust so created not
less than $200,000 personal property, besides the real estate. Thus
far each of the purposes of the testator, as expressed in his will, could
be fully carried out without any conversion of the real estate into
personalty, and without the exercise of the power of sale given to the
executors and trustees. I think also the further scheme of the will
—that is, the distribution of the property provided for in the ninth
paragraph, upon the death of the son, between the next of kin in
that paragraph mentioned—can also be carried out without such a
conversion, and it would seem also from the language there used that
the testator had such a distribution in his mind. He there provides
that upon the death of his son the principal of the trust fund designated
for him, together with all income therefrom then in the hands of the
trustees or uncollected, "shall be transferred and paid over by the said
trustees to my next of kin, to be divided between them　*　*　*　in
shares between themselves according to the statute of distribution, and
I give, devise and bequeath the same to such next of kin accordingly."
The use of the word "transferred" in addition to the words "pay over,"
and the use of the word "devise," indicate very clearly that the testa-
tor contemplated that at the time of the distribution there would be
real estate to be transferred to those entitled thereto, and he therefore
devised the same accordingly. It is urged by the administrator of
Mrs. Holland, however, that, because the division under these para-
graphs was to be "in shares between themselves according to the
statute of distributions," that indicated an intention that the fund
should be wholly personal before being distributed. I think, on the
contrary, when viewed in the light of the entire will, it only indicates
that the amount of the shares is to be governed by the statute of dis-
tributions, whether those shares be personal property or real estate, or
both. The same reasoning will apply to the trust fund created for
either of the beneficiaries thereof, other than the son; for the testa-
tor provides in the seventh paragraph that, "upon the death of the
beneficiary (my brother or sister) for whom the trust fund shall have
been designated, the principal of said trust fund shall be added to the
principal of the trust fund to be designated for my said son, and there-
after shall be held, used and disposed of by the said trustees in the
manner hereinafter provided for the disposition of the principal of the
said trust fund to be designated for my son."

That the testator did not intend a conversion is also apparent in the
ninth paragraph, where the trustees are given authority to allow the
son to occupy the testator's house and lot as a residence free of rent,

and where also the trustees are authorized, in their discretion, "to transfer or pay over to him (that is to the son) at any time, or from time to time, the whole or any portion of the principal of the said trust fund so designated for him; and in such case I give, devise, and bequeath to my said son absolutely so much of said trust fund as shall be so transferred or paid over to him by said trustees." Here again the use of the words "to transfer" as well as the words "to pay over," and the word "devise" as well as the word "bequeath," shows an intention to give authority to the trustees to pass the title of real estate as well as personal property to the son. Indeed, throughout the entire will the testator has carefully observed the distinction between the meaning of the words "bequeath" and "devise." It is apparent from the context that his use of these words, either separately or when coupled together, has not been a careless or accidental one, but has been to accomplish an intelligent purpose. That being so, the use of both these words, not only in the creation of the trust fund for the son, but in disposing of the remainder upon his death, shows very clearly that it was his intention that such trust fund should consist of both real and personal property, and that he had in mind that the trustees might hold the residuary estate in the form in which he left it, and at the termination of the trust that they would transfer it, or pay it over, in kind, to the remaindermen.

I think for these reasons that this will does not show that the testator intended by it to work an equitable conversion of real estate into personalty, nor is there any necessity for such a conversion to carry out the will, and therefore the decision of the surrogate, that the will did not work such a conversion, was right.

2. The contention of Sarah J. Snyder and the other surviving next of kin, that the administrator of the estate of Nancy Holland is not entitled to share in the distribution of the trust funds created by the will, is based upon the eleventh paragraph of the will, where it is directed that "no person who shall at the time of my death answer the description of my 'next of kin,' or my 'next of kin exclusive of my son,' shall be deemed by reason of that fact to have acquired any vested right to share in the distribution of any portion of my estate, but the phrases above quoted shall be construed in each case as including only such persons as shall answer the description at the time of making the payment or distribution." As the son Forest died February 16, 1902, and the sister Nancy Holland, March 25, 1902, no distribution of the estate had been made prior to the death of Mrs. Holland. Nor prior to the death of the brother James Lee, who died October 9, 1902, while the proceeding for an accounting was pending. The only surviving beneficiary of a trust fund is the sister Sarah J. Snyder. The surviving next of kin claim that the testator's intent, as shown by the eleventh paragraph of the will, above quoted, was that no estate should vest in his next of kin until the time of making distribution, and that any one who died prior to the time of distribution should not share in it. It is argued that the time of making distribution, referred to, is the time provided by law for the distribution, which in this case would be at the expiration of one year after letters were issued upon the testator's estate, regardless of the time when the death

of Forest, the son, should occur. It seems quite clear, however, from the will itself that this contention cannot be upheld. It is true that the testator has provided in the eleventh paragraph that there should be no vesting of his estate in these next of kin at the time of his death, but he has clearly fixed the time of the vesting of his residuary estate in such next of kin to be at the time of the death of his son; for he provides in the ninth paragraph that "upon the death of my said son * * * the principal of said trust fund so designated for him * * * shall be transferred and paid over by the said trustees to my next of kin, to be divided between them * * * in shares between themselves according to the statute of distribution, and I give, devise, and bequeath the same to said next of kin accordingly." Here is a direct gift to the next of kin, to take effect at the time of the death of the son. It cannot be that the testator, by saying in the eleventh paragraph that his next of kin should include "only such persons as shall answer the description at the time of making the payment or distribution," meant at the time when his trustees should physically divide his estate among those entitled thereto, or at the time when under the law such division should be made, but it is more reasonable that he meant at the time when he by the terms of his will had directed the payment or distribution to be made among them. If, as is claimed, he meant when the trustees should divide, or when under the law they were required to divide, such interpretation would make the residuary clause invalid, for there would then be an unlawful suspension of the power of alienation—that is, a suspension based upon a time limit, and not upon two lives in being—and it cannot be presumed that he intended to do that.

In each of the cases of Manice v. Manice, 43 N. Y. 303–367, and Shipman v. Rollins, 98 N. Y. 311, 325, the question was presented, under facts quite similar to those existing here, whether the estate vested at the time appointed by the testator for its distribution or at the time the actual distribution was made, and it was held in each case that there was a vesting at the time fixed by the testator for the division, and I think that principle must apply here.

Upon the death of the son, therefore, the residue of the estate vested in the next of kin of the testator described in the ninth paragraph of his will, subject, of course, to the three trusts and the payment of the three annuities provided for therein, and subject to the expenses of administration, all the debts and the specific legacies having been paid.

The testator, in addition to the brother and the two sisters who survived him, and who were trust beneficiaries under his will, left as next of kin, after the death of his son, the children of three sisters, who died before he did, so that upon a division there are six shares to be provided for, and one of these shares vested in Nancy Holland, and, so far as it consisted of personal property, passes to her administrator.

The decree should be affirmed, without costs. All concur.