J. VAN VECHTEN OLCOTT, Individually and as Administrator, etc., of LAURA I. OLCOTT, Deceased, Plaintiff, v. ESTATE OF CHARLES FREDERICK HOFFMAN, INCORPORATED, and Others, Defendants.

Supreme Court, New York County, June 3, 1926.

Wills — construction — right of life tenant to increase in capital fund — executors under permissive provision of will transferred real property to corporation formed under Real Property Law, § 116, and divided stock thereof among life tenants — representative of life tenant cannot retain stock upon payment of valuation of said life tenants' interest at time corporation was organized — real property not equitably converted by will.

A testator by will, after instructing his executors to divide his real estate into as many parts as he left surviving children, directed that the use and income of one of said shares be devised to each of his children with remainder over to the surviving brothers and sisters, or their issue, if any child died leaving no surviving children, and gave his executors a permissive power of sale.    The property was held undivided by the executors for about eight years when they formed a corporation pursuant to the provisions of section 116 of the Real Property Law.    After conveying the real estate to the corporation at a private sale at which the consideration was stated at $3,532,500, at which no money was passed, the executors issued stock of a par value predicated on the amount at which the property was transferred to the corporation and immediately divided it into four equal parts, causing a certificate for $875,000 to be issued to each of the four surviving children of testator or their representative issue as directed by the will.

Upon the death of one of the four children, without issue, who held a stock certificate as a life tenant, her representatives are not entitled to retain the stock on the payment to the executors of the estate of a sum of money aggregating one-fourth of the appraised valuation of the stock at the time the corporation was formed, and thus secure for her estate a large increment in capital value of the real estate and the stock.

Equitable conversion was not effected under the terms of the will, since the power of sale given to the executors was merely permissive; nor was there any necessity for the sale of the real property in order to comply with the terms of the will.    The apparent reason for the transfer of the property to a corporation was convenience in effecting a division among the life tenants.

Even though the will be construed to effect equitable conversion, and the bequest to said life tenant be considered one of personalty, the result will be the same, since the trust obligation of a life tenant with respect to personalty and realty is identical.

The fact that the executors eight years after testator's death exercised the power of sale and thereby reduced the life tenant's share to cash, does not warrant a finding that said life tenant's only obligation is to return the exact amount received upon the formation of the corporation, since there is no implication of intention in testator's will to bestow upon the life tenant any possible capital increment.

Moreover, a finding that there was a conversion into cash is inconsistent with the plan by which the parties in interest co-operated to form the corporation.

ACTION to determine ownership of stock issued to testator's daughter in corporation, formed pursuant to section 116 of the Real Property Law, to which executors transferred real estate.

*Daniel F. Cohalan* [*John E. O'Brien* of counsel], for the plaintiff.

*Middlebrook & Borland* [*Samuel Greenbaum* and *Clarence J. Shearn* of counsel], for the defendants.

PROSKAUER, J. By the 14th paragraph of the will of Charles F. Hoffman, his executors were instructed to divide his real estate into as many parts as he left surviving children and " the use, interest and income of one of said shares or parts of my real estate and the use of the proceeds thereof, if the same or portions thereof be sold by my Executors and Executrices under the power hereinafter conferred " is devised to each of his chrilden with remainder over to the children of his children respectively, or to the surviving brothers and sisters, or their issue, if any child died leaving no surviving children. By the 16th paragraph of the will a power of sale, permissive in terms, was given to the executors. The testator left him surviving four children. One of them (Mrs. Rodewald) died within three months of the testator, leaving infant children surviving her. The testator owned a large amount of productive real estate and some negligible amount of unproductive real estate. The property was held undivided until, in 1905, a corporation was formed pursuant to the provisions of section 116 of the Real Property Law* and the executors conveyed the real estate to the corporation at private sale pursuant to an agreement, which stated the consideration at $3,532,500. In fact no money was passed and for the conveyance the corporation issued stock of this par value to the executors, who immediately divided it into four equal parts and caused a certificate for $875,000 to be issued to each of the testator's children or their representative issue. The certificate issued to the testator's daughter (plaintiff's wife and intestate) described her as " Laura I. Olcott, life tenant." She died without issue. The defendants then asserted the claim that upon her death all her interest in the corporation and the

*Since amended by Laws of 1924, chap. 414.— [REP.

real estate ended and that her estate is accountable to the remainder-men for the entire amount of stock issued to her. The plaintiff claims that her estate is accountable only for the sum of $875,000 and that upon payment of this sum he is entitled to retain for her estate the stock issued to her and thus secure for her estate a very large increment in capital value of the real estate and the stock.

The life tenant became a trustee for the remaindermen. The general rule is that she was entitled only to the income of the fund and that the capital increment thereof belongs to the remaindermen. (*Thayer* v. *Burr*, 201 N. Y. 155, 158.)

Where the corpus takes the form of corporate stock, even undeclared earnings accrue to the benefit of the remainderman. (*U. S. Trust Co.* v. *Heye*, 224 N. Y. 242, 254, 255; *Baker* v. *Thompson*, Id. 592.)

The plaintiff, while apparently not questioning these general rules, urges that there are circumstances which make this case exceptional. He argues in the first place that under the rule of *Lawrence* v. *Littlefield* (215 N. Y. 561) there was an equitable conversion of the real estate into personalty. I think that *Lawrence* v. *Littlefield* has no application. There, substantially the entire estate was vacant, unproductive real estate, and unless the power of sale were exercised the life tenants would have received nothing whatever. A power of sale, permissive in terms, is to be construed as effecting an equitable conversion only when sale is necessary to a division, or where it is necessary " to accomplish the purpose intended by the general scheme of the will." (*Thompson* v. *Hart*, 58 App. Div. 448; affd., on opinion below, 169 N. Y. 571; *Matter of Coolidge*, 85 App. Div. 295, 303; affd., 177 N. Y. 541; *Chamberlain* v. *Taylor*, 105 id. 185, 191.)

" No conversion is effected where the purposes of the decedent may be carried out by a retention of the real estate by the executors or trustees and a transfer thereof by them to the persons entitled." (1 Davids N. Y. Law of Wills, 858.)

This testator certainly never contemplated that a division would be necessary to carry out the scheme of his will because paragraph " fourteenth " provided: " All the rest * * * of my real estate I direct my Executors * * * to divide into " four equal parts; " the division into such parts shall be made as nearly equal as in the judgment of my executors is practicable." There is no evidence that such a division was impracticable.

But even if the will were deemed to effect equitable conversion and the bequest considered technically one of personalty rather than of realty, no substantial difference would result. The trust

obligation of the life tenant with respect to personalty and realty is exactly the same. (*Matter of Rowland,* 153 App. Div. 327; *Smith* v. *Van Ostrand,* 64 N. Y. 278; *Matter of Ungrich,* 48 App. Div. 594; affd., 166 N. Y. 618.)

Plaintiff argues further, however, that when the executors, eight years after the testator's death, exercised the power of sale, they, in effect, reduced Mrs. Olcott's share to cash and that consequently her only obligation is to return the exact amount she received. The only cases tending to support this contention are based upon wills where the bequest itself was of cash. The intent of the testator must govern. Where he bequeaths cash to the life tenant, obviously he could have intended only that this cash was to be returned. By this will, however, real estate is devised and no such implication of intention to bestow upon the life tenant any possible capital increment is inferable. (*Matter of Cutler,* 23 Misc. 508; *Matter of Moeller,* 117 id. 803; *Matter of Clark,* 62 Hun, 275, 282; *Matter of Gerry,* 103 N. Y. 445, 450; *Townsend* v. *U. S. Trust Co.,* 3 Redf. 220, 223.)

Moreover, plaintiff's argument that there was a conversion into cash is inconsistent with actuality. The real estate was in fact never sold for cash. The parties in interest co-operated to form this corporation under section 116 of the Real Property Law.* The petition to the Supreme Court was made under that section even though it did not specifically refer to it. The interests of the various infants were conveyed pursuant to a special proceeding under section 116. The corporation was intended by every party in interest to be a creature of that section, which provides that wherever a life tenant " is entitled to receive the proceeds of the sale of any real property sold or to be sold  *  *  *  pursuant to a power of sale contained in a deed or will," and when all *adult* persons having an interest have agreed to convey to this corporation, then the life tenant " may, with the approval of the supreme court, invest his share of the proceeds of such sale in the stock or bonds of such corporation." · The section then provides the form of a special proceeding in the Supreme Court for the execution of such a plan. The provision of section 116 essential in this controversy is that the life tenant may, with the court's approval, " invest his share of the proceeds of such sale in the stock or bonds of such corporation." In place of specific realty or the proceeds of specific realty the life tenant is permitted to take as the corpus of the life estate stock of such a corporation. That is exactly what Mrs. Olcott did. Whether the transaction be viewed

* Since amended by Laws of 1924, chap. 414.— [REP.

as the legal fiction claimed by the plaintiff, namely, that it was a sale for cash with the proceeds then invested in stock, or whether it be viewed in accordance with the actual facts as a transfer of the real estate for the stock, the legal result is the same.  The proceeds of the one-quarter share in which Mrs. Olcott had a life estate were invested in the stock of this corporation.  The stock was the corpus of the fund and on Mrs. Olcott's death it reverted to the remaindermen.

There is some evidence that the corporation from time to time invested in other real estate and sold some of the properties derived from the testator and distributed to its stockholders portions of the capital gains thereby realized.  I do not pass upon the propriety of these distributions.  The plaintiff's intestate shared in them and no doubt the parties in interest believed that they were acting correctly in making these distributions.  But their intention is of no consequence.  It could not affect adversely the interests of the remaindermen.  Their rights were fixed by the testator's will and the action taken thereunder pursuant to section 116.

I direct judgment for the defendants.