amount as may be necessary to meet the expenses thereof. This not only does not appear, but there are affirmative allegations showing that such compliance with the section has not been made. There is an allegation that the plaintiff has requested the commissioner to make such return, and that he has refused; but such refusal does not enable the plaintiff to proceed, in the first instance, against the city. If the commissioner of buildings neglects to perform a duty imposed upon him by this section, then he may be compelled to do so by mandamus. He must return the precept, to the end that the judge or justice may determine whether the amount indorsed thereon is a proper charge against the city. Until that is done plaintiff is not in a position to enforce its claim. Indeed, until that time, his cause of action is not complete. People ex rel. Allison v. Board of Education, 26 App. Div. 208, 49 N. Y. Supp. 915.

The proceeding under which the expenses were incurred is a statutory one, and the only way in which one can be reimbursed for expenses incurred is by proceeding in the manner pointed out by the statute. If the commissioner of buildings neglects to perform the duty imposed upon him, then, as already indicated, he can be compelled to do so by mandamus, or the plaintiff himself can take such proceedings as he may see fit to have the precept returned to the judge or justice for the purpose of having the expenses taxed and adjusted by him. It is only after the precept has been returned and the adjustment made as directed in section 155 of the Building Code that it is made the duty of the comptroller to pay, and until that has been done there is no duty to pay resting upon the city.

The interlocutory judgment appealed from, therefore, must be affirmed, with costs. All concur.

---

(110 App. Div. 799.)

### In re HOLLAND.

(Supreme Court, Appellate Division, Third Department. January 8, 1906.)

ATTORNEY AND CLIENT—TRANSACTIONS BETWEEN—ADVICE.

To sustain a transaction between attorney and client advantageous to the attorney, he must show not only that he used no undue influence, but that he gave the client all the information and advice that it would have been his duty to give had he not been interested, and that the transaction was as beneficial to the client as it would have been had the client been dealing with a stranger.

[Ed. Note.—For cases in point, see vol. 5, Cent. Dig. Attorney and Client, §§ 239, 240, 244.]

Appeal from Surrogate's Court, Warren County.

In the matter of the administration of the goods, chattels, and credits that were of Nancy Holland, deceased. From an order denying the application of Frederick F. Pruyn, committee of the person and property of De Witt C. Holland, an incompetent person, for an order opening, vacating, and setting aside two decrees of the surrogate's court, each purporting to settle the account of Henry A. Howard, as administrator of Nancy Holland, deceased, said committee appeals. Reversed.

Argued before PARKER, P. J., and SMITH, CHASE, CHESTER, and KELLOGG, JJ.

McArthur & Starbuck (J. A. Kellogg and J. H. Barker, of counsel), for appellant.

John L. Hill, for respondent.

CHASE, J.　An attorney at law is a sworn officer of the court. Some one has said that an attorney's duty is well expressed in the Institutes in these words:

"These are the precepts of the law: to live honorably; to injure nobody; to render to every one his due."

In Story's Equity Jurisprudence, § 310, referring to the relation of client and attorney, it is said:

"It is obvious that this relation must give rise to great confidence between the parties and to very strong influence over the actions and rights and interests of the client. The situation of an attorney or solicitor puts it in his power to avail himself not only of the necessities of his client, but of his good nature, liberality, and credulity to obtain undue advantages, bargains, and gratuities. Hence the law with a wise providence not only watches over all the transactions of parties in this predicament, but it often interposes to declare transactions void which between other persons would be held unobjectionable."

Owing to the confidential and fiduciary relations between an attorney and his client, and to the influence of the attorney over his client growing out of that relation, courts of law, and especially of equity, scrutinize most closely all transactions between an attorney and his client. To sustain a transaction of advantage to himself with his client the attorney has the burden of showing not only that he used no undue influence, but that he gave to his client all the information and advice which it would have been his duty to give if he himself had not been interested, and that the transaction was as beneficial to the client as it would have been had the client dealt with a stranger. 4 Cyc. 960; 3 Am. & Eng. Ency. of Law (2d Ed.) 332, 333.

In Nesbit v. Lockman, 34 N. Y. 167, the court, referring to a transaction between attorney and client, say:

"The transaction is scrutinized with the extremest vigilance and regarded with the utmost jealousy. The clearest evidence is required that there was no fraud, influence, or mistake that the transaction was perfectly understood by the weaker party."

In Hitchings v. Van Brunt, 38 N. Y. 335, the court say:

"The agreement upon which this action is brought is one between an attorney and his client providing for a large compensation upon the success of the former in conducting a cause. * * * In considering such a transaction it may not perhaps be necessary to go to the extreme length of some of the cases which hold that, where a security is thus taken, the absolute presumption of unfairness arises wherever the relation of counsel and client exists."

And the court further say that it is proper to invoke the well-settled doctrine announced by the court in Nesbit v. Lockman, supra.

In Sheehan v. Erbe, 103 App. Div. 7, 92 N. Y. Supp. 862, the court say:

"Where it appears that an attorney is consulted to extricate a person from his difficulties, that the relation commenced because of the position held by the attorney, and the attorney undertakes to act for the person consulting him, the relation of attorney and client exists, and, when under these circumstances an attorney accepts a transfer of property from his client, the burden is upon the attorney, and the transaction is assailed on establishing the fact that the transfer was a fair one and that his client understood its terms and conditions."

In Turnbull v. Banks, 22 App. Div. 508, 48 N. Y. Supp. 40, an old feeble woman, ignorant of business and its methods, wrongfully supposed her nephew was an equal owner with her in certain premises. The nephew commenced an action of partition against her, and also to establish a claim in connection with the property, which if successful would have deprived her of all interest in it. She made an agreement with an attorney, who was familiar with the title and knew that the nephew could not maintain an action for partition, by which, in consideration of the execution by the old woman of a mortgage upon the premises for one-half of its value, he undertook to defend the action. It was held that the attorney was not entitled to assert the mortgage for any greater amount than the fair value of his services.

Keeping in view the duty of an attorney as a sworn officer of the court, and of the rules applicable in the consideration of transactions between an attorney and client, we will review the facts before us as briefly as consistent with a proper understanding of the case. Nancy Holland, who at the time of her death and for many years prior thereto had been the wife of De Witt C. Holland, died on the 25th of March, 1902. She was a sister of one George W. Lee who died in 1901 leaving a last will and testament, the terms of which are quite fully set forth in Matter of Coolidge, 85 App. Div. 295, 83 N. Y. Supp. 299. Forest T. Lee, the son of George W. Lee, died February 16, 1902, intestate and without leaving a widow or descendant. Nancy Holland and her husband, De Witt C. Holland, were very poor. After the death of George W. Lee it was known that Nancy Holland was a legatee under his will, and a proceeding was commenced to have her declared an incompetent person. Said Henry A. Howard, an attorney and counselor at law, appeared in that proceeding for Nancy Holland and for De Witt C. Holland, her husband. The proceeding resulted in the said Nancy Holland being declared an incompetent person, and committees of her person and estate were appointed. De Witt C. Holland was wholly uneducated, not being able to read or write; he was a laboring man, and never accustomed to business transactions. The appellant's affidavits assert that he was a man of "low mentality," and of "weak mental powers." The respondent's affidavits assert "that his memory was good, his statements fairly accurate, and his conduct quite intelligent"; that "he exhibited fair intelligence for one in his station of life and was clear in his statements"; that he was "a man of fair intelligence, his conversation was intelligent, and he seemed to fully comprehend all matters on which we conversed"; that he "was a man of ordinary capacity, mentally able to understand and comprehend affairs as well as the average man in his station of life." Upon the death and before the burial of his wife he went to the executors of the will of said Lee and asked for money to defray her funeral ex-

penses and to clothe himself to attend the burial, but they refused to advance him any money. He was told by two persons with whom he conversed to go to said Howard, which he did, and Howard provided for the burial of his wife and secured for him clothing so he could attend the funeral; and he told Holland that when the services were over to come and see him again. After the burial of his wife Holland went to Howard and gave him a power of attorney to act for him in the matter of his claim to his deceased wife's share in the estate of said Lee, after which Howard made an examination of the will of said Lee. Six days after the death of Nancy Holland, and on March 31, 1902, Holland having applied to Howard for legal advice respecting his claim to a part of the residuary estate of said Lee, an agreement was made between Holland and Howard, which Howard states as follows:

"This respondent undertook to prosecute and enforce said claim and furnish all necessary means to prosecute said claim, which expenses should be repaid to him by said Holland upon the understanding and agreement made March 31, 1902; that one-half of the money obtained from said executors on said claim as the result of his effort should be received and retained by him as compensation for his services and for the amount of such contemplated expenditures; that said agreement contemplated that this respondent should become the administrator of said goods, chattels, and credits; and that his services as such should be compensated out of his said share of said collections, but that he should have full power and authority to retain and pay an attorney and counselor from the contemplated ultimate share of said De Witt C. Holland when the service of such attorney and counsel should become reasonable or necessary."

At the time of making the alleged agreement Howard told Holland that the executors of said Lee claimed that Holland was not entitled to a share in said estate, and that their claim was so well sustained by the opinion of adverse counsel that his claim was extremely doubtful and difficult to establish. After making the alleged agreement Holland made a petition to the Surrogate's Court for the appointment of an administrator of the goods, chattels, and credits of Nancy Holland, deceased, in which petition he stated that she died entitled to personal property not exceeding $50,000 in value and real property not exceeding $3,000 in value, and asked that said Howard be appointed administrator. Howard was appointed sole administrator of the goods, chattels, and credits of Nancy Holland, deceased, although he was neither one of her next of kin nor a creditor of her estate. See section 2660, Code Civ. Proc. The appointment was made June 11, 1902. The executors of said Lee subsequently commenced a proceeding for an accounting, in which said Howard as administrator was made a party. In that proceeding Howard appeared by one Sturges as counsel, and the claims of the parties thereto regarding the construction of said will were presented and a decree was entered December 8, 1902, in favor of the contention of the said administrator. An appeal was taken from said decree to this court, where the decree was affirmed in June, 1903. Matter of Coolidge, supra. An appeal was taken from the judgment of affirmance to the Court of Appeals, where the same was affirmed January 9, 1904. Matter of Coolidge, 177 N. Y. 541, 69 N. E. 1121.

On the 13th day of September, 1902, said De Witt C. Holland was on the certificate of two physicians in lunacy found to be a lunatic,

and he was sent to the State Hospital for the Insane at Utica. He remained there for several months and was then discharged. On September 19, 1903, he was again on a like certificate found to be a lunatic, and he was sent to said hospital for the insane, where he remained until about the middle of June, 1904. On December 15, 1902, the executors of said Lee, notwithstanding their appeal to this court from the decree of December 8, 1902, paid to said Howard as administrator on account of his share in said estate $15,559.45, and on May 2, 1904, they made another payment to said Howard as administrator of $7,047.85. Within a week after said Holland returned from the insane asylum the second time, and on or about the 21st day of June, 1904, said Howard appeared in Surrogate's Court with an intermediate account of his proceedings and without a petition or a citation; but, on the consent of said Holland in open court, a decree was entered as in an intermediate accounting. The account showed the receipt by said Howard of said two payments from the executors of said Lee and $480.14 interest thereon. It credited himself with one-half of the amounts received from the executors of said Lee, also with $100 paid a surety company for signing his bond as administrator, $134.50 funeral expenses, $2,000 paid Sturges for legal services, and some small items paid for and advanced to Holland. The decree provided that the balance of $9,072.64 be paid to Holland as his share of the amount thus far collected by said Howard. No vouchers from himself, nor any evidence of the agreement between Howard and said Holland, were filed. The $9,072.64 was placed by Howard in a bank in the name of said Holland. On February 20, 1905, the executors of said Lee paid to Howard as administrator the further sum of $23,395.29. On the 1st day of March, 1905, the administrator again appeared in the Surrogate's Court with an account showing said payment to him of February 20, 1905, and crediting himself with $11,472.39, one-half thereof, also with $4,000 paid to the estate of said Sturges for legal services, a small amount advanced to Holland, $450.01 retained to pay the transfer tax, and the balance of $7,394.39 to said Howard. No voucher from himself, nor any evidence of the agreement between Howard and Holland, was filed. Upon the consent of said Holland in open court a decree was entered as on a final settlement of an account, expressly relieving Howard from all liability to any person. At the time of said final decree, as well as said intermediate decree settling the account of said administrator, the administration of the goods, chattels, and credits of said deceased had not been completed, and there remained an unsettled balance due said Howard as administrator from the estate of said Lee, and other claims remained uncollected, and the transfer tax on the estate of Nancy Holland had not been paid. Said balance of $7,394.39 was also placed in a bank in the name of Holland by said Howard. A short time after the decree was entered, March 1, 1905, an application was made to have said Holland declared an incompetent person, and he was duly adjudged an incompetent person upon the inquisition of a jury, and on April 12, 1905, the inquisition was in all things confirmed, and the petitioner herein was duly appointed committee of the person and estate of said Holland. Since the decree of March 1, 1905, purporting to finally settle the estate of

said Nancy Holland, said Howard has received for said estate $4,501.05, and there remains uncollected a balance from the estate of said Lee, the amount of which does not appear. Upon the appointment of the petitioner as committee of the person and estate of the said Holland, he made this application to set aside the decrees. The said administrator received up to the time of the decree of March 1, 1905, $46,002.59, and he has since received $4,501.05. He has retained for himself from the amounts received up to the time of said decree $22,776.03, besides paying from the remainder $6,000 for legal services. Said Holland has received $16,467.03. Howard is willing to divide the $4,501.05 in his hands in equal shares between said petitioner as committee of Holland and himself.

There was sufficient uncertainty in the provisions of the will of said Lee to justify his executors in refusing to distribute the residuary fund without the direction of the court in a proceeding or action in which the parties interested could all be present and bound thereby. Upon the death of Nancy Holland it was necessary that an administrator of her goods, chattels, and credits should be appointed, and the position taken by the executors of the estate of said Lee made it necessary that such administrator should be represented by competent counsel on the settlement of the account of such executors and the construction of said will. The relation of De Witt C. Holland to, and his rights in the residuary estate of, said Lee are set forth in Matter of Coolidge, supra. The opinion there recorded is on an appeal from the decree of the Surrogate's Court on the settlement of the account of said executors.

The only question relating to the construction of said will involving any considerable amount is the question discussed in Matter of Coolidge, supra, as to the time when the residuary estate vested in the next of kin of George W. Lee, deceased. Howard, being a lawyer of many years' experience, examined the will before he entered into the alleged agreement with Holland and knew that, if the will was construed as stated in Matter of Coolidge, supra, Holland was entitled to receive one-sixth of the residuary estate of said Lee, being about $50,000, as stated in the petition for the appointment of an administrator of Nancy Holland, deceased. It also appears by Matter of Coolidge, supra, that if such construction had not prevailed the residuary clause of said will would have been invalid as an unlawful suspension of the power of alienation. The court, in construing said will, said:

"If, as is claimed, he meant when the trustees should divide, or when under the law they were required to divide, such interpretation would make the residuary clause invalid, for there would then be an unlawful suspension of the power of alienation; that is, a suspension based upon a time limit, and not upon two lives in being, and it cannot be presumed that he intended to do that."

If the residuary clause of the will of said Lee had been found to be invalid, the residuary would have passed to said Forest T. Lee as the only next of kin of said George W. Lee; and as Forest T. Lee was then dead, and had died intestate after the death of George W. Lee, the said residuary estate would ultimately have been distributed among his next of kin, viz., his uncles and aunts. Matter of Davenport, 172 N. Y. 454, 65 N. E. 275. When the agreement under which Howard

claims that he performed the services for Holland was made, and at the times when Holland assented in open court to the decrees as entered, and when he expressed to others his approval of the agreement and arrangement with Howard, he understood as far as he appreciated his rights that, unless the will was construed to give to Nancy Holland a direct vested interest in the residuary estate of said Lee from the death of Forest T. Lee, as claimed by Howard, he would never receive one cent, and Howard would not receive anything for his services or obtain any return for his disbursements. It appears that Forest T. Lee died leaving seven uncles and aunts, of which Nancy Holland was one. The result of the construction of the will, therefore, so far as it affected Holland's interest in said residuary, only interested him to the extent of the difference between one-sixth and one-seventh thereof. Howard and Holland did not deal on a plane of equality. Howard, a trained lawyer, could weigh and appreciate the prospects of succeeding in a contention which has since been sustained in all the courts, and also the effect upon Holland's rights in the residuary estate if his particular contention as to the construction of said will was not sustained. Holland, an ignorant and wholly untrained man, even if competent to make an agreement involving so much and growing out of technical property rights, did so without being told more than a part of such rights. It is not claimed but that the agreement was made after the fiduciary relation of attorney and client existed between them, and Holland, at least, should have been told and made to understand his legal rights under every possible construction of said will of Lee. Would Howard as attorney for Holland have advised him to enter into the agreement with a stranger? If so, it would have been poor advice. It was a hard bargain, and the compensation to Howard is out of all proportion to the amount of work performed by him. It now appears that Howard did not take any risk whatever. Looking at the whole matter as of March 31, 1902, should a trained lawyer have assumed or have given his client to understand that there was any material risk about ultimately obtaining for Holland some part of said residuary estate of Lee?

It is not intended by this opinion to prejudge a determination of the rights of the parties in any future or further proceeding herein; but, on the record now before us, the order appealed from should be reversed, with $10 costs and disbursements, and said decrees should be vacated and set aside, and said administrator should be directed to render a new account of his proceedings as such administrator in said Surrogate's Court on notice to the petitioner herein. All concur.