RIDGE v. HEALY et al.

(Circuit Court of Appeals, Eighth Circuit. May 18, 1918.)

No. 4904.

1. ATTORNEY AND CLIENT ⟂143—CONTRACTS FOR COMPENSATION—PRESUMPTIONS.

A contract between attorney and client relative to compensation for services, made after the relationship has been entered into, is not per se void, but is presumptively invalid, and will be scrutinized very carefully by the courts whenever the transaction is called in question.

2. ATTORNEY AND CLIENT ⟂166(1)—CONTRACTS FOR COMPENSATION—PRESUMPTIONS.

Where an attorney and client made a contract for compensation after the relationship was established, the attorney has the burden of proving fairness and openness in making the contract, and that he fully explained to the client the facts and legal rights, so far as known to him.

3. ATTORNEY AND CLIENT ⟂144—CONTRACTS FOR COMPENSATION—PRESUMPTIONS.

A contract for compensation of an attorney, made after the relation of attorney and client was established, will be construed most strongly against the attorney.

4. ATTORNEY AND CLIENT ⟂166(1)—CONTRACTS FOR COMPENSATION—PRESUMPTIONS.

Where an attorney and client agreed upon compensation after the relationship was established, and the attorney sues in equity upon the contract, he must show that his claim, independent of the express terms of the contract, is so fair and equitable that a court of equity will not hesitate to enforce it.

⟂For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

5. TRUSTS ⨂46—TRUST AGREEMENTS—VALIDITY.

A trust agreement between an attorney and client, accepting a trust without bond, absolved from the duty of collecting money for the trust and of giving personal attention to the detailed management thereof, and requiring a cotrustee to act in such matters and to submit a monthly report, and securing to the attorney no compensation other than for legal services, was unfair to the client and to the other cestuis que trust.

6. ATTORNEY AND CLIENT ⨂147—CONTRACTS FOR FEES—VALIDITY.

Contract between attorney and client for fees of 20 per cent. if the case came to trial, and 10 per cent. if it were compromised, of the entire amount secured for the client, which recited her refusal of offer to compromise giving her 40 per cent. of the property involved in a will contest, held unfair and unconscionable.

7. ATTORNEY AND CLIENT ⨂147—CONTINGENT FEE CONTRACTS—DUTIES OF ATTORNEY.

An attorney, concluding a contingent fee contract with his client, is bound to explain to her the distinction between a contingent fee in cases where any recovery at all is doubtful and in cases where at least a 40 per cent. recovery is assured by reason of a compromise offered by the adverse party.

8. ATTORNEY AND CLIENT ⨂147—CONTINGENT FEE CONTRACTS—DUTIES OF ATTORNEY.

An attorney, on concluding a contingent fee contract with his client, the effect of which is to make his fee payable and an interest-bearing obligation upon conclusion of a compromise, is bound to explain to his client such effect of the contract.

9. ATTORNEY AND CLIENT ⨂166(1)—CONTINGENT FEE CONTRACTS—VALIDITY —EVIDENCE.

Where attorney concluded contingent fee contract with his client, which recited refusal of attempted compromise by his client, and called for the immediate payment of his fee upon any compromise, contract acknowledging his due the sum of $50,000, a statement estimating the value of the property, an order upon trustees to pay the amount of the fee to the attorney and a promissory note for the amount of the fee, all made while the relationship of attorney and client still existed, were of little probative value for the purpose of establishing that the client understood the contingent fee contract.

10. ATTORNEY AND CLIENT ⨂166(1)—CONTINGENT FEE CONTRACTS—REASONABLENESS—EVIDENCE.

The amount paid to associate counsel in a will contest, which was not questioned and the fairness of which was unchallenged, was proper evidence to be considered as to the reasonableness of the contingent fee agreed upon, and the value of the services of the attorney who claimed the contingent fee.

11. APPEAL AND ERROR ⨂1009(1)—SCOPE.

The conclusion of the trial court sitting in equity should not be disturbed, unless obvious error in the application of the law was committed, or grave mistake made in consideration of the facts.

12. ATTORNEY AND CLIENT ⨂166(3)—AMOUNT OF COMPENSATION—EVIDENCE— SUFFICIENCY.

Evidence held insufficient to sustain the finding of the trial court as to the value of the services of an attorney who assigned his claim to plaintiffs.

13. EQUITY ⨂66—MAXIM—DOING EQUITY.

In a suit in equity by the assignees of the claim of an attorney under a contingent fee contract, the maxim that he who seeks equity must do equity is applicable.

Appeal from the District Court of the United States for the Western District of Missouri; Arba S. Van Valkenburgh, Judge.

⨂For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Suit by John C. Healy and others, partners as Healy, Ferris & Mc-
Avoy, against Margaret D. C. Ridge. From the decree rendered, the
defendant appeals. Remanded, with instructions to modify.

Frank Hagerman, of Kansas City, Mo. (Glen Sherman, of Kansas
City, Mo., on the brief), for appellant.

John C. Healy, of Cincinnati, Ohio, and H. M. Langworthy, of
Kansas City, Mo. (Howard Ferris and Malcolm McAvoy, both of Cin-
cinnati, Ohio, and O. H. Dean and W. D. McLeod, both of Kansas
City, Mo., on the brief), for appellees.

Before SANBORN and CARLAND, Circuit Judges, and BOOTH,
District Judge.

BOOTH, District Judge. This is a suit in equity to recover on a
contract for services as an attorney; also to impress a lien for the
amount claimed upon certain property belonging to the defendant, and
for a foreclosure of the lien. The contract was originally made be-
tween appellee Howard Ferris, of Cincinnati, Ohio, and appellant,
Margaret D. C. Ridge, of Kansas City, Mo. It was assigned by Ferris
to his firm, who are plaintiffs in the suit. Among the defenses set up
were the following: That the contract was unfair and unconscionable,
in view of the relationship existing between the parties at the time it
was made, and in view of the circumstances under which it was made;
that the amount claimed was unreasonable, in view of the services ren-
dered; that the services rendered were not properly nor fully per-
formed.

Trial in the court below resulted in a decree for a money judgment
in favor of plaintiffs, the establishing of a lien to secure the same upon
certain real estate of defendant, and a foreclosure of the lien. Upon
this appeal among the errors assigned and relied upon by the appel-
lant are the following: That the evidence shows that the contract, or-
der, and note upon which the decree and judgment were founded were
procured by fraud, misrepresentations, and coercion, and were void;
that the services rendered by Ferris were without value to the defend-
ant, and the fee as fixed by the contract, order, and note was exorbi-
tant, and procured from the defendant while the relationship of attor-
ney and client existed between Ferris and the defendant; that the
fraud shown in the evidence on the part of Ferris should have barred
the complainants from a court of equity and denied them equitable re-
lief. These several assignments of error may properly be considered
together, and in considering them it becomes necessary to examine
somewhat at length the facts disclosed by the evidence.

The defendant, Mrs. Ridge, was the second wife of Dr. Isaac M.
Ridge, of Kansas City. He died May 7, 1907. He left property, real
and personal, of the approximate value of $1,125,000 over and above
the mortgage liens thereon. There were two mortgages—one for
$350,000, covering a portion of the property; the other for $75,000,
covering another portion of the property, and covering also, as a sec-
ond mortgage, the property covered by the preceding mortgage. Dr.
Ridge left a will, dated June 14, 1900, by which he bequeathed a small
amount to each of three children by a former wife, and the remainder

of his estate to the defendant, Mrs. Ridge. He had made two prior wills, which were in existence. A will contest was filed by the three children, seeking to set aside the last will, on the alleged ground that the testator was mentally incompetent at the time of making the will, and also on the ground that he had been unduly influenced by his wife in the making of the will. Mrs. Ridge's attorneys were the firm of Lathrop, Morrow, Fox & Moore and Mr. C. O. Tichenor, all of Kansas City. The will contest was still pending, and several offers of compromise had been made between the parties, when plaintiff Ferris entered the case. His entry was brought about largely by the efforts of a mutual friend of Mrs. Ridge and himself, named Smith, of Cincinnati. A letter, dated November 26, 1907, had been written by Smith, who was then temporarily in Kansas City, to Ferris, outlining the situation. This letter was written after consultation by Smith with Mrs. Ridge and Mr. Geo. W. Curtiss, brother-in-law of Mrs. Ridge. Correspondence followed between plaintiff Ferris and Mr. Curtiss or Mrs. Ridge, and in March, 1908, Ferris made his first visit to Kansas City to become better acquainted with the case.

The written contract upon which the suit is brought was entered into December 10, 1908. Ferris had been acting as attorney for Mrs. Ridge for a number of months prior to this date. Just when the relationship of attorney and client began is uncertain from the evidence. Ferris in his testimony is not sure whether it was in March or April, 1908. The exact date is not of vital importance. During the period from March or April, 1908, to December, 1908, Ferris had made several visits to Kansas City, had become acquainted with the property involved, its situation and condition, and the incumbrances thereon, had become acquainted with the claims of the contesting parties, and had conferences with the attorneys of Mrs. Ridge who were in her employ prior to his coming. He knew that propositions of settlement had been made, knew what these propositions were, knew that the attorneys for Mrs. Ridge favored a settlement rather than litigation, and knew that Mrs. Ridge herself had refused offers of compromise made to her. He himself had taken part in negotiations touching one compromise, known as the 40 per cent.-60 per cent. compromise. This offer had been rejected by Mrs. Ridge upon his advice, or at least with his approval. He had looked up questions of law involved in the controversy, and the questions of fact, and the evidence to support the same, to a considerable extent. He knew of the existence of the two prior wills, and was acquainted with the statutory provisions of the state of Missouri in regard to dower. He had assumed the active control in the management of the case, and had carried on an extensive correspondence with Mrs. Ridge in regard to the contest, and the outlook for the same.

The evidence also shows that by the end of this period Mrs. Ridge looked upon Ferris as her most trusted, if not her sole, legal adviser, and placed in him her implicit confidence. This condition had been brought about, in part at least, by the friendly statements of Mr. Smith by extended social intercourse with Ferris, and by the reiterated ex-

pressions by him of self-praise, accompanied by derogatory remarks as to associate counsel. During this period the position of Ferris was distinctly adverse to a compromise settlement. This is shown conclusively by his letters to Mrs. Ridge and Mr. Curtiss introduced in evidence. January 3, 1908, he writes to Curtiss, who was closely in touch with Mrs. Ridge and was assisting and advising with her in the case:

"I have gained from you the information that Mrs. Ridge would not entertain any proposition of any character at this time, except one for the dismissal of the suit at their costs. This should be her attitude, and doubtless is. I would be very firm in the position thus taken."

May 18, 1908, he writes to the same party:

"I assume the fact to be that Morrow has urged Mrs. R. to compromise and has used the situation as a club for that purpose. This I expected. * * * I knew that Morrow was not in sympathy with any plan, except one that came as the result of a compromise. * * * Mr. Morrow does not seem anxious to have the matter of the will contest heard, and gave me no assurance when it would be reached. * * * He does not intend to fight. He wants to settle."

May 29, 1908, he writes to Mrs. Ridge:

"Do nothing in the matter of compromise or adjustment until I come to Kansas City. * * * I do not need to say that I still entertain the conviction that the contestants will not be fair enough to make a reasonable proposition, and therefore I shall forget all questions of settlement and give my entire attention to the details looking toward a trial. * * * You deserve victory, and for the life of me I cannot see why you are not due to win."

August 27, 1908, he writes to Mrs. Ridge as follows:

"I do not think now at all about questions of compromise. I think I have done my full duty toward you, toward the theories of Mr. Morrow, and have made the courtesies due to Smart and Dean in the efforts made by them to effect a jug handle settlement. I shall take the initiative in matters of this kind only when you direct me to proceed in this direction."

September 14, 1908, he writes to Mrs. Ridge:

"Inasmuch as I have written counsel that propositions of settlement are at an end, I am preparing for a fight, and expect to come to Kansas City as soon as the case is set for trial, and devote myself entirely for at least a week or ten days to an examination of the facts and the preparation of our case for trial."

Numerous other letters by him were in the same vein. The contract entered into on December 10, 1908, reads as follows:

"Kansas City, Mo., December 10, 1908.

"This memorandum of agreement made and entered into this 10th day of December, A. D. 1908, by and between Margaret D. C. Ridge, of Kansas City, of the first part, and Howard Ferris, an attorney at law, of Cincinnati, Ohio, party of the second part, witnesseth:

"The party of the first part has employed the party of the second part to attend to all legal matters growing out of the contest of the last will and testament of Dr. I. M. Ridge, by William E. Ridge, Thos. S. Ridge, and Sophia Lakenan, children of Dr. Ridge in a suit, No. 33639, now pending in the circuit court of Jackson county, Mo., in which suit the said Margaret D. C. Ridge, widow of Dr. I. M. Ridge, is the defendant.

"The party of the first part has authorized the party of the second part to

conduct negotiations relating to a settlement of all matters in controversy in said suit No. 33639, and a proposition has been submitted by the plaintiffs, offering to give to the widow, M. D. C. Ridge, 40% of the entire estate, and guaranteeing the payment of the sum of $6,000 per year and the free use of the residence for a period of two years from the date of settlement. This proposition was refused, and a counter proposition was made to the contestants to make an even division of the estate, 50% to the contestants and 50% to the contestee. Each party having made an endeavor to settle all matters in dispute, and neither offer having been accepted, it now becomes necessary to prepare the case for trial. Many depositions have been taken and many witnesses have been examined, and much time and labor will be required to properly present the facts and the law to the court and jury, and for that purpose the party of the first part has employed the party of the second part to take entire charge of all matters relating to the preparation and trial of said case, as well as to conduct all negotiations for a settlement of the case, in the event that an adjustment be made. The party of the first part does now therefore constitute and appoint the said Howard Ferris, party of the second part, as her true and lawful attorney to do any and all things necessary in the proper conduct of the litigation over said will, and to enter into and negotiate a settlement with Wm. E. Ridge, Thos. S. Ridge, and Sophia Lakenan, contestants, on the best terms obtainable, and upon such conditions as may seem to him right and proper, and in accordance with instructions heretofore given him by me, and I herewith ratify and approve all that my attorney may do in this behalf.

"In the event that the employment of local additional counsel shall be necessary or advisable. in the preparation and trial of said suit, authority is hereby given party of the second part to contract for such assistance on terms to be approved by the party of the first part.

"I hereby authorize my attorney, Howard Ferris, to employ such medical experts as may be required in said case, and I agree to pay, not only all expenses that have been incurred in the preparation of the case up to this time, but also such as may be necessary either in the taking of depositions, traveling expenses, or other expenses in and about said case.

"Contract of employment of Howard Ferris as attorney for Margaret D. C. Ridge, as executrix and widow of Dr. I. M. Ridge, deceased:

"(1) In consideration of legal services rendered to me during the year 1908, in the preparation for trial of case No. 33639 of the circuit court of Jackson county, Missouri, wherein Wm. E. Ridge et al. are plaintiffs and Margaret D. C. Ridge is defendant, said suit being a contest of the last will and testament of Dr. Isaac M. Ridge; and (2) in consideration for legal services rendered in and about various matters of settlement, and for legal advice given me from time to time, in reference to all matters of property; and (3) in consideration of further legal services to be rendered in and about all matters in contest in case No. 33639, Jackson circuit court of Mo., until the same is either settled by a final decree of court or by the acts of the parties all consenting, I, Margaret D. C. Ridge, hereby bind myself to pay to said Howard Ferris, attorney, a sum of money equal in amount to twenty (20%) per cent. of the market value of the property to be received by me in final settlement of all matters involved in said case No. 33639 should said case come to trial, together with such sums of money as may have been expended in my behalf in and about the preparation and trial of said case.

"If a settlement should be made with the contestants before trial, then in consideration of legal services now rendered and to be rendered I bind myself to pay to said Howard Ferris the full sum of the 10% of the market value of the property so to be received by me in such settlement, and I further agree to repay whatever sums may have been expended in the preparation of said case for trial.

"Howard Ferris accepts said employment upon the conditions named herein, and in consideration of such payments to be made as aforesaid agrees to give and furnish all legal services required in the defense of the last will of Dr. I. M. Ridge, as well as to give to Margaret D. C. Ridge all legal advice that may be required by her in the care and management of her estate until

the final termination of all matters in suit in case No. 33639 of the Jackson county, Mo., circuit court.

"In testimony whereof the parties have hereunto set their hands this 10th day of December, A. D. 1908.                    "Margaret D. Campbell Ridge.
                                                            "Howard Ferris.

"We approve above:
        "Geo. W. Curtiss.
        "Emma V. Curtiss.
        "Dapsilia Robbins."

Bearing the same date as the contract, the following instrument was executed:

### Exhibit 86.

"Kansas City, Mo., Dec. 10th, 1908.

"I have this day agreed with Margaret D. C. Ridge to accept at her urgent solicitation the position of trustee to carry into effect a trust arrangement by which the property left by the last will and testament of Dr. I. M. Ridge shall be held in trust until the conditions named in said trust deed shall have been fully complied with.

"This acceptance is upon the following conditions:

"First. I shall not be required to give any bond for the faithful performance of the trust.

"Second. I shall not collect or be required to collect any money belonging to said trust.

"Third. That I shall not be required to give any personal attention to the details of the management of the buildings, the making of repairs or betterments, the collection of rent, the employment of help, the payment of taxes, interest, or charges, or any other matters except those that are legal and of an advisory nature.

"Fourth. That George W. Curtiss will agree to act for me and in my behalf in all matters and under my express directions and shall do all things necessary to be done in and about said duties of the trust, except only such duties as relate to matters that are legal in their character or relate to policies to be pursued in the management of the trust.

"Fifth. That a monthly report shall be made to me, or more frequently if desired, showing all receipts and disbursements on account of said trust after the same has been submitted to and approved by Margaret D. C. Ridge.

"Sixth. I shall receive no compensation for any services except those of a legal character, and that whatever may be allowed to me as trustee for services in the management of the trust shall be paid to George W. Curtiss for services to be performed by him.

         "[Signed]                                    Howard Ferris.
"Kansas City, Mo., Dec. 10th, 1908."

[1-4] In the consideration of the foregoing contract the following well-settled principles are applicable:

1. A contract between attorney and client relative to compensation for services, made after the relationship has been entered into, is not per se void, but is presumptively invalid, and will be scrutinized very carefully by the courts whenever the transaction is called in question. Such a contract stands on the same basis as a contract between guardian and ward, or trustee and cestui que trust.

2. The burden of proof is upon the attorney to show fairness and openness in the making of the contract, and that full information and explanation was given to the client, both of the facts, so far as known to the attorney, and also of her legal rights.

3. Such a contract, in case of dispute as to the meaning of its terms, will be construed most strongly against the attorney.

4. If the attorney comes into a court of equity, seeking the enforcement of such a contract, he must be prepared to show that such enforcement will not be unfair or inequitable to the client; in other words, that his claim, independent of the express terms of the contract, is so fair and equitable that a court of equity would not hesitate to enforce it. Perry on Trusts (6th Ed.) §§ 202, 203; 1 Story, Eq. Jur. (13th Ed.) §§ 310, 311; 3 Am. & Eng. Ency. of Law (2d Ed.) pp. 332, 333; Elmore v. Johnson, 143 Ill. 513, 32 N. E. 413, 21 L. R. A. 366, 36 Am. St. Rep. 401; Trice v. Comstock, 121 Fed. 620, 57 C. C. A. 646, 61 L. R. A. 176; United States v. Coffin (C. C.) 83 Fed. 337; French v. Cunningham, 149 Ind. 632, 49 N. E. 797; Nesbit v. Lockman, 34 N. Y. 167; Hitchings v. Van Brunt, 38 N. Y. 335; In re Holland, 110 App. Div. 799, 97 N. Y. Supp. 202.

In considering the contract in the case at bar, it is to be noted that the client had other attorneys already employed, and that no consultation was had with them in reference to the contract. They were not even apprised of the making of such contract, either by Mrs. Ridge or by Ferris. One reason why they were not informed by Mrs. Ridge is apparent, upon reading the letters from Ferris containing allusions to the other attorneys. No explanation is offered by Ferris why this contract was not disclosed by him to the other attorneys. The contract, when drawn, was presented to Mrs. Ridge for her signature, but was not left for consideration by her before signature. No copy of the contract was left with her after its execution.

As to the provisions of the contract, it is to be noted: (1) The right of Mrs. Ridge to control her litigation was in effect taken from her and placed in the hands of Ferris. The employment of other counsel was left to his judgment, although other counsel had already been employed and were still attorneys in the case. (2) Though Mrs. Ridge's interest in the estate was not dependent solely upon sustaining this will, since under the other wills she would be entitled to a considerable portion of the estate, and possibly almost the whole of it, and, even if the wills should all be set aside, she would still be entitled to a very substantial dower interest in the estate under the statutes of Missouri, yet, notwithstanding this, the contingent fee provided for in the contract was to be computed on the value of the dower right, as well as on the value of any further share that might be secured. (3) The contract itself recited that a compromise giving 40 per cent. of the estate to Mrs. Ridge had already been rejected, yet the contingent percentage fee provided for in the contract was to be paid if a settlement was made, whether this former compromise offer was increased, or even diminished.

[5] The document, Exhibit 86, bears the same date as the fee contract. Whether this Exhibit 86 was discussed in detail with Mrs. Ridge, whether its provisions and effect were known and understood by her, the evidence leaves in doubt. If it was known to her, it should be considered as having a bearing upon the fee contract, being made at the same time and closely connected therewith. If Exhibit 86 was not known and thoroughly understood by Mrs. Ridge, nevertheless it must be considered as having a bearing upon the fairness of the fee

contract, inasmuch as it shows clearly what was in the mind of Ferris at the time of making the fee contract. Exhibit 86, so far as appears from the record, was never shown to the cotrustee of Ferris under the trust agreement that afterward was entered into. Exhibit 86 was never in fact carried out, and the character of its provisions leads to doubt whether it was ever intended to be carried out. Five of its six provisions were contrary to the provisions contained in the trust agreement as finally entered into, and it is very difficult to understand how any one could have faithfully carried out the terms of Exhibit 86 and also the provisions of the trust agreement actually made, or any other trust agreement that would probably be made. The provisions of Exhibit 86 on their face were unfair to any cotrustee that would be selected to carry out the proposed trust, unfair to all the cestuis que trust, including Mrs. Ridge. No explanation of Exhibit 86 is given by Ferris. Yet no one can read its provisions, bearing in mind that it was drawn up on the same date that the fee contract was drawn, without reaching the conclusion that an explanation was imperatively required.

One of the tests that has been suggested for determining whether a contract between attorney and client, entered into after the relationship has begun, is fair and equitable, is whether an outside, disinterested attorney, having full knowledge of the surrounding facts and circumstances, would have advised the client to enter into the contract. If this test be applied here, it seems hardly conceivable that an attorney could have been found who would have given that advice to Mrs. Ridge, whether the fee contract is considered by itself alone or in connection with Exhibit 86.

[6] The conclusion is that the fee contract, in its possibilities at least, was unfair and inequitable. The contract was entered into on the 10th of December, 1908. The compromise trust agreement was made January 30, 1909. Mrs. Ridge's assent thereto was given on the insistent demand of Ferris. The trust agreement provided in effect that the same share of the estate should eventually go to Mrs. Ridge as had been provided by the compromise agreement, which had been rejected shortly before the fee contract was entered into. Yet this former compromise agreement had been rejected, either with the advice, or at least without protest on the part, of Ferris. The inquiry is therefore pertinent: What had happened between the 1st of December, 1908, and the 30th of January, 1909, which caused Ferris to insist that Mrs. Ridge accept this 40 per cent. settlement? Several developments had occurred during the period mentioned: First, the taking of depositions of medical experts at Cincinnati; second, the attempt by Ferris to get control of the $75,000 mortgage above mentioned, which would fall due February 1, 1909; third, the purchase of said mortgage by the contestants of the will; fourth, the making of the fee contract between Ferris and Mrs. Ridge; fifth, certain letters from Lathrop and Fox to Ferris.

That the taking of the depositions in Cincinnati had no unfavorable effect on the situation, so far as Mrs. Ridge was concerned, we learn from the letters of Ferris himself. On January 8, 1909, he writes to Mrs. Ridge:

"I write you at the end of a very busy day, spent in the examination of one of our leading expert witnesses on mental diseases, and basing his testimony entirely on the autopsy and the deposition of Dr. Hall. He has annihilated the position of the contestants, and has shown that Dr. Ridge was possessed of a perfectly sound mind, without a sign of impaired mentality. * * * Your case can be won on medical testimony, and I propose to make that so plain that it will be a crime on the part of any one to deny to Dr. Ridge the right to have made the will that he did."

On January 13, 1909, he writes to Mrs. Ridge:

"In regard to the depositions, I think that you will say that we have done unusual work in getting this medical testimony in splendid shape for trial. I think I know that the case is well prepared, and I have no hesitancy in saying now that they cannot meet and overcome the expert medical testimony that will be concluded to-day."

As to the failure by Ferris and the success by opposing counsel in getting control of the $75,000 mortgage:

That this mortgage, falling due February 1, 1909, and being a first lien on the homestead, and a second mortgage on the other real estate, was a serious element in the situation, is apparent, and this fact was recognized by all the parties interested. As early as March, 1908, Ferris knew of this mortgage, as well as the larger mortgage, and that they were a menace to the estate. He knew the advantage it would give to the side having it in control. As early as May, 1908, Ferris thought it would be advisable to take up this matter with Van Dyke, the owner of the mortgage. Later all the parties interested were notified that there were no funds in the estate which could be used to pay the mortgage. Ferris went twice to Milwaukee to see about the matter. In December, by letters from Fox and Lathrop, the attention of Ferris was called to the importance of arranging this matter of the $75,000 mortgage.

The testimony shows that Ferris assured Mrs. Ridge that he could and would make arrangements to meet this mortgage. As a matter of fact, he did not make arrangements to meet it, but the mortgage was bought in by the Pioneer Trust Company for the contestants. This happened prior to January 12, 1909. Ferris was informed of it by Mrs. Ridge. He learned, while taking the depositions in Cincinnati, January, 1909, who the real purchasers were. He writes, however, to Mrs. Ridge, January 12, 1909, as follows:

"Nothing new has developed, except that we have had a full conference with Messrs. L., D. & S., and have learned all about the Van Dyke mortgage. They admit ownership, and have stated to us the reasons for their purchasing it, and insist upon their right to hold it as against you. We told them that we were prepared to make a tender of the $75,000, and expected to carry the matter at once into the courts for the purpose of establishing your rights, if need be. * * * They agree not to take any steps whatever in the matter, and are trying to satisfy us of the sincerity of their course."

Again, on January 13, 1909, he writes Mrs. Ridge:

"We all worked at the office here last night until after ten o'clock going over with D. & S. in a rather fiery way the law questions. We succeeded in coming to a truce. They delayed all matters relating to the $75,000 claim until we can present the matter fully to a court of equity. * * * They expressed a willingness to enter into a stipulation not to take steps until

after 45 days' notice. They are willing, now that we are ready to assert our rights, to behave themselves."

It would seem from these letters that Ferris at this time did not consider the purchase of the mortgage by the contestants to be an imperative reason for making a settlement. However, on January 15, 1909, Ferris received a letter from Fox setting forth the situation as Fox viewed it; and it appears from this letter that the situation, from Fox's point of view, was a very serious one. He wrote that the situation required the raising of $100,000 by February 1st, and closed as follows:

"If this can be done I can see how we may avert disaster. If otherwise, I favor an immediate settlement on the terms proposed."

The situation, therefore, about the middle of January, 1909, was that the medical depositions had been taken at Cincinnati, and, according to Ferris, had improved the situation; that the contestants had bought in the $75,000 mortgage, but, according to Ferris, this had not imperiled Mrs. Ridge's rights; that the other counsel of Mrs. Ridge did think the situation somewhat desperate, and were strongly urging settlement; that Ferris had secured in writing his fee contract, and had formed in his own mind, at least, the plan of becoming one of the trustees for the management of the estate. After the taking of depositions in Cincinnati, Ferris went to Kansas City and remained there continuously until after the execution of the trust agreement, which he assisted in drawing.

The evidence as to this change of attitude on the part of Ferris leads to the conclusions: First, that Ferris had not fully realized the seriousness of the situation and the necessity for settlement until it was plainly set forth in the letter from Fox; second, that this letter was an important, if not a controlling, factor in bringing about a settlement; third, that the mind of Ferris had become in a more receptive state to entertain the idea of compromise and settlement, in view of the fact that his fee contract had been signed and the plan for a trusteeship formulated.

It is suggested, however, that the letters of Ferris did not represent his real opinions in regard to the situation and the advisability of settlement, but that these expressions on his part were simply for the purpose of assuring and encouraging Mrs. Ridge. This suggestion would seem to lead to a dilemma. If, as suggested, Mrs. Ridge was so nervous, excitable, and flighty as to require constant encouragement, even to the point of mild deception, why did not this state of her mind require the fullest and most careful explanation of the fee contract in all its bearings and possibilities? On the other hand, if she was an unusually capable and keen woman, and able to grasp a situation in all its details, why was it necessary for Ferris to continue writing her that no compromise should be entertained, if this was not his real opinion? And why the numerous slurs toward local counsel contained in his correspondence?

Whatever the compelling motive was in the mind of Ferris, the fact is that he persuaded Mrs. Ridge to enter into the trust agree-

ment, and that this trust agreement was one of the results of his services under the fee contract. The settlement agreed upon, so far as division of the estate was concerned, was substantially the same as the one contained in the offer which had been rejected prior to the time when the fee contract was made. The settlement contract, however, provided for a trust under which the estate was to be managed; and, while this may have been of some advantage to the interests of Mrs. Ridge, yet it was not without its disadvantages also, for, according to the construction placed upon the fee contract by Ferris, the making of the settlement agreement terminated the fee contract, and his compensation thereunder became due at once, and thereafter was an interest-bearing obligation. Furthermore, the trust agreement not only put the compensation of Ferris as attorney on an interest-bearing basis, but it also provided him with a new position as trustee, with compensation attached thereto. And if Exhibit 86 was to be in force, Ferris might also claim compensation for legal services.

The recital of the services of Ferris and value thereof (Exhibit 3), the valuation of the estate (Exhibit 4), the order on the trustees for the payment of attorney's fees (Exhibit 5), and the promissory note for $50,000 (Exhibit 6), all signed by Mrs. Ridge, are claimed by Ferris to be results of the fee contract. Exhibits 3 and 4 bear date March 10, 1909; Exhibits 5 and 6, February 1, 1909. The date when these various documents were executed, what their exact purpose was, and whether Mrs. Ridge was fully advised and clearly understood their meaning and purpose, are all in dispute under the evidence.[1] Counsel for plaintiffs take the view that these instruments, having been signed by Mrs. Ridge after the termination of the relationship of attorney and client between Ferris and her, tended to show clearly that she understood the fee contract, what it called for, and when it terminated, and were, in effect, a construction by her of the fee contract. This conclusion of counsel is hardly justified by the evidence; on the contrary, there is substantial evidence that Mrs. Ridge still considered that Ferris was acting as her attorney long after these instruments were signed, also that he himself took the same view, and that, as a matter of fact, he did act as her attorney. She writes him as "counsel" long after the date of these exhibits; he writes to her, referring to himself as her "counsel." As late as August 12, 1910, he writes to Mrs. Ridge:

"I have just finished your lengthy letter of August 9. * * * The tone of the letter and its contents confirm the impression that I have had that my

---

[1] Exhibits 3, 4, 5, and 6 are:

### Exhibit 3.

Kansas City, Mo., March 10th, 1909.

I have this day signed, as of Feb. 1st, 1909, an order on Howard Ferris and Jas. G. Smart, trustees, for the sum of fifty thousand dollars, the same being for legal services rendered by Howard Ferris in case No. 33636 of the Jackson county, Mo., circuit court, and being a sum agreed by me to be paid to the said Howard Ferris by contract of Dec. 18th, 1908, in which contract I agreed to pay for his legal services the sum of 10% of the value of property coming to me on distribution in the event of a compromise of said litigation. A careful estimate of the property, of which I am to receive, after payment of debts and expenses, a two-fifths portion, I believe and agree, for the purpose of estimating the amount due Howard Ferris, to be worth the sum

usefulness to you as counsel has terminated.  *  *  *  I simply will not act as counsel when cordial and confidential relations do not exist, and for that reason I have no advice, additional to my recent letter, to offer."

That he was actually engaged in performing legal services for Mrs. Ridge, quite apart from his duties as trustee long after the trusteeship commenced, is shown by the evidence.   April 21, 1910, he writes to Curtiss in reference to the matter of the homestead, which Mrs. Ridge claimed had been erroneously included in the trust agreement:

"Tell Mrs. Ridge that we are still working upon the question of the six-acre tract, and both Mr. Healy and myself are drawing very close to the conclusion that we can establish ownership in her.  We believe that we can show by competent testimony that the entire trust arrangement related only to the property devised by will.  It did not relate to deeds already drawn, and certainly did not contemplate a disposition of lands that had already been granted by Dr. I. M. Ridge to Margaret D. C. Ridge, without her knowledge or the knowledge of any one of the parties to the trust deed.  We are concerning ourselves now with the question of when we ought to open fire.  *  *  * When, however, we have matters in such a shape as that we do not have to fear results, this suit ought to be brought, and will be brought.  I express no opinion now as to the effect of such an action upon the trust.  If, however, we have executed the trust, or so nearly executed it, as to make our position perfectly safe, then this action would not imperil our rights."

---

of $500,000, and I hereby agree to pay to Howard Ferris for legal services the sum of $50,000.                              Margaret D. Campbell Ridge.

Indorsement on Back of Exhibit 3.

Cin., O., Feb. 1st, 1909.

For value received I hereby assign and transfer all my interest in the within contract to Healy, Ferris & McAvoy.                Howard Ferris.

Exhibit 4.

Kansas City, Mo., March 10, 1909.

To Whom It May Concern:

We, the undersigned, are familiar with the values of land and improvements in Kansas City, Mo., and especially the lands owned by the late Dr. I. M. Ridge, and appraise the market value of the same as follows:

| | | |
|---|---|---:|
| 1. | The Main street lot, 151.6 ft. at $5,000 per ft..............$ | 758,000 |
| 2. | The Walnut street property, 125 ft. at $4,000 per ft......... | 500,000 |
| 3. | The Ridge Heights property, 3,500 ft. at $125 per ft....... | 437,500 |
| 4. | The Brooklyn avenue and Euclid avenue, at.............. | 100,000 |
| 5. | The Residence property ............................... | 50,000 |
| 6. | The Twenty-Second street property .................... | 20,000 |
| 7. | The Brooklyn avenue residence ....................... | 8,000 |
| | Total .......................................... | $1,873,500 |

These valuations, in our judgment, are conservative estimates of the properties, and can be realized, if offered at either private or public sale.
          [Signed]                              Mrs. Dr. I. M. Ridge.
                                                Geo. W. Curtiss.

Exhibit 5.

Kansas City, Mo., Feb. 1st. 1909.

To Howard Ferris and James G. Smart, Trustees:

You are hereby authorized and directed to pay to Howard Ferris, my counsel in case No. 33636, Jackson circuit court of Missouri, the full sum of fifty thousand ($50,000.00) dollars, and charge the same to my account.

This order is given you as trustees for myself and others in pursuance of

Other letters of Ferris to Mrs. Ridge might be cited to the same effect. It seems clear, therefore, that the relationship of attorney and client continued to exist between Ferris and Mrs. Ridge, notwithstanding the making of the settlement trust contract. Consequently the instruments, Exhibits 3, 4, 5, and 6, instead of being executed as between parties at arm's length, were instruments executed between attorney and client, and as such are to be viewed in the light of the same principles as the fee contract, scrutinized with the same care, and construed with the same strictness.

The results under the fee contract were: (a) The making of the settlement agreement; (b) the making, according to Ferris, of Exhibits 3, 4, 5, and 6, in order to carry out the fee contract, and which placed the fee contract upon an interest-bearing basis. The results of the settlement agreement were: (1) A 40 per cent.-60 per cent. division of the estate; (2) according to Ferris the termination of the fee contract; (3) change of status of Ferris from attorney to trustee, or perhaps to trustee and also attorney; and (4) as an indirect result of the advice of Ferris, the suit against Mrs. Ridge to establish the status of the homestead property.

[7] The lower court found the fee contract not unconscionable. But it seems to us that the court, in so holding, viewed the contract as one between parties dealing at arm's length, instead of between parties holding special fiduciary relations to each other. Several matters, which have one aspect when viewed from the former standpoint, take on quite a different aspect when viewed from the latter. Among such matters may be mentioned the dower interest of Mrs. Ridge. A

that provision in article two of an agreement signed January 30th, 1909, by myself and the heirs of Dr. I. M. Ridge, as follows:

"The trustees are authorized and directed to pay to the respective counsel, such sums as may be agreed in writing by the beneficiaries of this trust and charge the amount so paid to their respective accounts."

The written receipt of Howard Ferris will be your voucher in the final settlement of the trust, and is to be charged to my account on distribution.

Margaret D. C. Ridge.

Received copy of the above and of indorsement hereon from Judge Howard Ferris this September 9, 1911.      James G. Smart, Trustee.

### Indorsement on Back of Exhibit 5.

Cin., O., Feb. 1st, 1909.

For value received I hereby transfer and set over all my right, title, and interest in the within contract and order to Healy, Ferris & McAvoy.

Howard Ferris.

### Exhibit 6.

$50,000.        Kansas City, Mo., February 1st, 1909.

On demand, after date, I promise to pay to the order of Howard Ferris, at the Fourth National Bank of Conti, O., fifty thousand ($50,000) dollars, for value received, with interest from date at the rate of 6 per cent. per annum.        Margaret D. C. Ridge.

Interest payable ———.
Due ———. Address
No. ——— Payable at ———.

### Indorsement on Back.

Pay to the order of Healy, Ferris & McAvoy.        Howard Ferris

contingent fee contract, based upon the uncertainty of any recovery, is one thing. But a so-called contingent fee contract, based upon a certainty of a substantial recovery by way of dower, and also upon a reasonable expectation of a further recovery, is quite a different thing. It was incumbent upon Ferris to make this distinction clear beyond peradventure to Mrs. Ridge; but the evidence fails to show that he did this.

[8] Again, in view of the fact that the only source from which Mrs. Ridge could obtain funds with which to pay Ferris was such property as she might finally get as her own, and in view of the further fact that this was fully known to Ferris, and in view, also, of the relationship which existed when the fee contract was made, it was incumbent on Ferris to explain to Mrs. Ridge fully and clearly, at the time, that the fee contract, according to his view, would terminate with the making of any settlement agreement, whether she obtained immediate possession or not, and that his fee would become due immediately upon the making of a settlement, and thereafter bear interest. The evidence does not show that he did this, nor does it show that Mrs. Ridge clearly understood that such would be the result.

[9] Exhibits 3, 4, 5, and 6 have little probative force to show that Mrs. Ridge had from the first a full understanding of the fee contract, when considered in view of the circumstances under which these instruments were made, and in view, also, of the relations existing between Ferris and Mrs. Ridge at the time they were made. These instruments do, however, emphasize the inequity and the unfairness of the fee contract, as construed by Ferris.

Stress is laid by counsel on the claim that the work done by Ferris under the fee contract required not only legal, but great financial, skill. We see little force in this suggestion. Whatever financial skill was exercised by Ferris was displayed after the time when he claims the fee contract terminated. He was paid therefor in his capacity as trustee. The evidence clearly shows that this fee contract had been signed with the expectation on the part of Mrs. Ridge of sustaining the will and thereby obtaining practically the whole estate—certainly of obtaining a better settlement than a 40 per cent. division. It resulted in obtaining nothing better than what had been offered theretofore. It was signed, according to the testimony on behalf of Mrs. Ridge, with the understanding that the services of Ferris as attorney were to continue until she actually received her estate or her share thereof. It resulted, according to Ferris, in his services as attorney stopping far short of this goal, and in his compensation being then fixed and placed upon an interest-bearing basis.

Exhibit 86, taken in connection with the fee contract, shows that this result was in the mind of Ferris when the fee contract was made. The evidence falls far short of showing that any such result was in the mind of Mrs. Ridge. Yet, by reason of the relations existing between them, Ferris was bound to explain fully this possible or expected outcome, especially when he had it in his own mind at the time. Light is thrown upon the fee contract and the results of the same by the evidence as to the fees of associate counsel, the firm of Lathrop,

Morrow, Fox & Moore. This firm had been attorneys for Mrs. Ridge in the probate of the estate before the will contest began, and were her attorneys in the will contest from its beginning until the making of the trust agreement. About the time of the making of the trust agreement, Ferris, acting ostensibly on behalf of Mrs. Ridge, asked the firm the amount of their charges. He was told that the total charge would be $10,000, which would include the services of Morrow as executor, the services of the firm in the probate proceeding, and the services of the firm in the will contest. The evidence shows that this amount was considered fair and reasonable both by Mrs. Ridge and by Ferris, and at the time of the interview Ferris expressed the opinion that he ought to have as much as that for his fee. No mention was made of his fee contract, and the associate counsel were ignorant of its existence.

[10] This matter of the fee of associate counsel has a bearing on the rights of Ferris. The court below took the view that Ferris, under his fee contract with Mrs. Ridge, was obliged to pay the charges of associate counsel, and reduced the amount sued for, namely, $50,-000, by that part of the fee of associate counsel apportioned to the will contest, viz. $7,300, thus leaving $42,700 for Ferris. In our judgment, the amount of the charges of associate counsel has a bearing also on the question of the fair and equitable value of the services of Ferris; and it must be borne in mind that it is only the fair and equitable value of his services that Ferris is entitled to recover, notwithstanding his contract, because of the relationship existing between him and Mrs. Ridge when the contract was made.

As heretofore stated, the efforts of associate counsel had an important influence in bringing about the trust settlement. The letter of Fox to Ferris, above mentioned, was instrumental in bringing Ferris to the view that a settlement was absolutely necessary. It was a case of Fox persuading Ferris, and Ferris persuading Mrs. Ridge. The charge of associate counsel stands unchallenged as fair and reasonable for the services rendered. It was fixed after the services were performed. No express contract was involved. The high standing of the firm is unquestioned. The services in their result-producing character were not inferior to those of Ferris. The main element of difference in favor of Ferris was in the amount of time actually expended. The amount of the fee of associate counsel, therefore, does have a probative value touching the reasonableness of the amount claimed by Ferris.

If, however, we are wrong in concluding that the letter of Fox was an important factor in bringing about the change of attitude on the part of Ferris toward a settlement, then, eliminating this factor, we are led to the conclusion upon the face of the record, that this change was due to the remaining factor in the situation, viz. the obtaining by Ferris of his fee contract. But, if this last factor was instrumental in bringing about the change of attitude, then the inequitable and unconscionable character of the fee contract and its results need no further demonstration. The conclusion reached, after a careful consideration of the record, is that the contract was unconscionable and in-

equitable in its terms, and would be unconscionable and inequitable in its results, if construed and enforced as demanded by Ferris.

[11] The trial court had the witnesses before it, and gave the evidence careful consideration, and its conclusions should not be disturbed, unless obvious error in the application of the law was committed, or grave mistake made in consideration of the facts. But it seems clear that error was committed in overlooking the important fact that this fee contract was made between Ferris and Mrs. Ridge while the relation of attorney and client existed between them, and therefore was presumptively invalid, and also in assuming, though not directly holding, that the burden was upon the defendant to show inequity or unfairness in the fee contract, or in the results under it, instead of requiring the plaintiffs to sustain the burden of proving that the fee contract was fair and equitable in its terms, and that the result of enforcing the same would also be fair and equitable.

[12] It also seems clear that error was committed in holding that the evidence disclosed that the fair and reasonable value of the services of Ferris was the amount of $42,700. This it was incumbent upon the plaintiffs to show by evidence quite apart from the provisions of the contract itself.

[13] Plaintiffs are here seeking the aid of a court of equity. It is a case for application of the doctrine that he who seeks the aid of a court of equity must do equity. In our judgment, the services of Ferris would be fully and adequately compensated by payment of the sum of $15,000. The case should be remanded to the District Court, with instructions to modify the decree, so that it will adjudge that the defendant Margaret D. C. Ridge is indebted to the complainants in the sum of $15,000, that in case Mrs. Ridge pays that amount to the plaintiffs, or into the court below for their benefit, within 60 days after the entry of the modified decree, the contract regarding the compensation of Mr. Ferris, the order on the trustees for the payment of attorney's fees, and the promissory note for $50,000, all of which were signed by Mrs. Ridge, be adjudged discharged, null, void, and of no effect from and after such payment, and that neither party shall recover any costs in the District Court; but that, if said $15,000 is not so paid, then the complainants shall be adjudged to have such a lien on the real estate of Margaret D. C. Ridge described in the original decree for said $15,000 and interest thereon from 60 days after the entry of the modified decree, and such foreclosure of such lien, and such sale of such property as were adjudged in the original decree for the $42,700, interest, and costs therein mentioned.